**Jerald OAKES, Jr., Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**Nos. CS–94–194–JLQ, CR–90–304–JLQ.**

United States District Court,
E.D. Washington.

Oct. 21, 1994.

Jeffry K. Finer, Spokane, WA, for petitioner.

Thomas O. Rice, Asst. U.S. Atty., Spokane, WA, for respondent.

## MEMORANDUM OPINION RE: PETITIONER'S AMENDED PETITION TO VACATE AND SET ASIDE A CONVICTION AND SENTENCE BY A PERSON IN FEDERAL CUSTODY

QUACKENBUSH, Chief Judge.

**BEFORE THE COURT** is Petitioner's Amended Petition to Vacate and Set Aside a Conviction and Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (Ct.Rec. 82), heard with oral argument on October 13, 1994. Petitioner was represented by Jeffry Finer; Respondent was represented by Thomas O. Rice. Having reviewed the record, heard from counsel, and being fully advised in this matter, the court orders as follows.

### I. *FACTUAL BACKGROUND*

On November 4, 1990, the North Central Washington Narcotics Task Force executed a search warrant at Petitioner's residence in Tonasket, Washington. During the course of the search, the officers discovered a marijuana manufacturing operation in Petitioner's basement. Petitioner was arrested by the task force officers and charged in the Superior Court of Okanogan County with conspiracy to deliver marijuana. The state sentencing range for Petitioner's offense was 1 to 3 months imprisonment. Because Petitioner was a first time offender with no prior criminal history, his state sentence would likely have been from 0 to 90 days, followed by a period of supervised release. Dissatisfied with the applicable state sentencing range, the task force officers sought prosecution within the federal system.

On November 26, 1990, the federal government filed a civil forfeiture complaint against Petitioner's home, commonly known as 43 Oakes Drive, alleging that the property had been used for the purpose of conducting a marijuana grow operation and was therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) & (7). *See United States v. 43 Oakes Drive, Crumbacher Estates, Tonasket, Washington,* CS–90–491–JLQ.

On December 4, 1990, the federal government criminally charged Petitioner with manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1). *See United States v. Oakes,* CR–90–304–JLQ. The Government did not include a count within the criminal indictment seeking forfeiture of the Oakes' home. On December 20, 1990, the State Superior Court dismissed the state charge without prejudice.

On March 6, 1991, Petitioner pleaded guilty to the criminal charge. Pursuant to the written plea agreement (Ct.Rec. 22), Petitioner forfeited all interest in the real property, to-wit, his home located at 43 Oakes Drive, which, as previously indicated, was the subject of the civil forfeiture action. The specific language of the plea agreement provided in relevant part:

> ■ c. The defendant, Jerald Oakes, Jr., agrees that any and all interests that he has in the property known as 43 Oakes Drive ... *shall be forfeited* to the United States pursuant to 21 U.S.C. § 881(a)(6) and (7), said property having been used to commit or to facilitate a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ...

(Ct.Rec. 22 at p. 2 lines 8–26) (emphasis added).

On May 24, 1991, pursuant to Petitioner's plea of guilty, this court orally sentenced Petitioner to the mandatory minimum sentence of five years. A written sentencing judgment, however, was not entered. Thereafter, Petitioner filed a motion for reconsideration, which this court granted on June 28, 1991. On August 28, 1991, this court modified its previous sentencing judgment, and sentenced Petitioner to 6 months alternative custody and three years probation. A formal judgment and sentence was entered on August 28, 1991.

On September 6, 1991, the United States appealed the court's sentence.

On January 4, 1992, Petitioner reported to the Geiger Corrections Center to commence service of his sentence.

On January 9, 1992, a decree of forfeiture was entered against the real property in the civil forfeiture action. In the decree of forfeiture, presented by Assistant United States Attorney Gregory Shogren, the Government reiterated its position that Petitioner had forfeited his interest in the real property to the United States pursuant to a criminal plea agreement executed on March 6, 1991. *See* (Ct.Rec. 37 at p. 2 lines 17–24; Case No. 90–CS–491–JLQ).

On August 14, 1992, the Ninth Circuit reversed this court's sentencing judgment. On December 14, 1992, pursuant to the Ninth Circuit mandate, this court re-sentenced Petitioner to the mandatory five year term. On December 10, 1993, after an appeal by Petitioner, the Ninth Circuit reluctantly affirmed the sentence. *United States v. Oakes,* 11 F.3d 897 (9th Cir.1993). Although the Ninth Circuit affirmed the harsher sentence, it agreed with this court's statement that the prosecution's decision to seek a five year mandatory minimum, while also forfeiting the Oakes' home, placing Mrs. Oakes and two children under age 5 on the street and homeless, was "bizarre." *Id.* at 899.

On June 28, 1994, Petitioner, proceeding *pro se,* filed a § 2255 habeas petition. On August 29, 1994, Petitioner, through his court-appointed counsel, filed an amended § 2255 petition in which he alleged that he was sentenced in violation of the Fifth Amendment double jeopardy clause. Petitioner also alleged that his sentence and civil forfeiture constituted an excessive fine in violation of the Eighth Amendment.

Petitioner's amended petition presents the following issues for review:

1. Whether Petitioner's plea of guilty to the underlying criminal charge waived his right to challenge his sentence on double jeopardy grounds.

2. Whether the Government's criminal prosecution of the Petitioner as well as its parallel civil forfeiture of his real property violated his rights under the Fifth Amendment double jeopardy clause.

3. Whether Petitioner's amended petition seeks to have a new rule applied retroactively.

4. Whether the criminal sentence or the civil forfeiture constitutes the second prohibited punishment.

5. Whether the forfeiture of Petitioner's real property was an excessive fine in violation of the Eighth Amendment.

## II. *DISCUSSION*

In its written brief, the Government rested its argument entirely on the premise that Petitioner waived any conceivable double jeopardy claim when he pleaded guilty to the underlying criminal charges and forfeited his interest in his home pursuant to that plea. Thus, the Government did not address the merits of Petitioner's double jeopardy claim, and appeared to concede the issue subject to its waiver argument and its contention that if double jeopardy existed, the forfeiture was the second punishment. At oral argument, however, the Government contested the merits of Petitioner's double jeopardy claim, and sought permission to file supplemental briefing. Although the court did not grant Respondent's request, the court will consider the Government's oral argument in making its ruling.

## A. WAIVER

Respondent begins its waiver argument by citing the well settled proposition that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *See* Resp. brief at 5–7, citing *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). Because Mr. Oakes does not challenge either the voluntariness or intelligence of his guilty plea, Respondent contends that his double jeopardy collateral attack must fail under the rule of *Mabry* and its progeny. *See* Resp. brief at 8. In support of its argument the Government principally relies upon *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

*Broce,* however, does not support Respondent's position as the following recitation of the case history surrounding the *Broce* case will reveal. In 1975, the Supreme Court issued a per curiam decision in which it rejected the state's position that a counseled plea of guilty waived a defendant's right to subsequently claim a violation of the double jeopardy clause. *See Menna v. New York,* 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975) (per curiam). The Court in *Menna* held that where a state is precluded by the United States Constitution from hailing a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty. *Id.*

What appeared to be a simple and straightforward mandate, however, was

twisted by the Court's footnote wherein it stated:

> We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute.

*Id.* at 62 n. 2, 96 S.Ct. at 242 n. 2.

Shortly after the *Menna* decision was handed down, the Ninth Circuit was faced with the issue of whether a guilty plea waived all double jeopardy claims. *See Launius v. United States,* 575 F.2d 770 (9th Cir.1978). In *Launius,* the defendants pleaded guilty to two counts of an information which charged a single offense. The defendants, however, received consecutive sentences that exceeded the statutory maximum for the single offense. Two years after the defendants were imprisoned, they brought a section 2255 petition alleging that the information was multiplicious and that the consecutive sentences violated the double jeopardy clause. Although the district court agreed that the consecutive sentences constituted double jeopardy, it denied relief based upon a finding that the defendants had waived their double jeopardy claim when they pleaded guilty to the information.

The Ninth Circuit reversed the district court, finding that while a plea of guilty waived all constitutional claims with regard to factual guilt, it did not waive those constitutional claims which stood in the way of a conviction even if factual guilt was validly established. *Launius,* 575 F.2d at 771 citing *Menna* 423 U.S. at 63 n. 2, 96 S.Ct. at 242 n. 2. Accordingly, the court rejected the government's argument that the defendants had waived their double jeopardy rights by pleading guilty. *Id.*

This commenced the beginning of a split among the circuits. Like the Ninth Circuit, some circuits began to hold that a double jeopardy claim was not waived by a plea of guilty to the extent that the claim was evident from the indictment. *See United States v. Atkins,* 834 F.2d 426, 436 and 436 n. 8 (5th Cir.1987) (citations omitted). Because a plea of guilty was an admission as to the factual underpinnings of the indictment, these courts precluded defendants from attempting to substantiate their claims by going outside the record or the face of the challenged indictment. *Id.* Other circuits, however, held that *Menna* stood for the much broader proposition that a defendant did not waive a double jeopardy claim by pleading guilty, regardless of the factual allegations the defendant was relying on to substantiate his double jeopardy claim on appeal. *Id.*

With this split among the circuits, the Supreme Court accepted certiorari in *Broce.* In *Broce,* the defendants pleaded guilty to two separate conspiracy indictments brought before the district court in a single proceeding. Both indictments charged a conspiracy to rig bids on certain highway projects, in violation of the Sherman Act; however, each indictment alleged separate and distinct conspiracy dates. The defendants pleaded guilty and were sentenced. On the same day the defendants entered their pleas, the government charged different individuals, alleging yet another bid-rigging conspiracy in *United States v. Beachner.* The *Beachner* defendants went to trial and were acquitted. The government then brought another indictment against these individuals alleging three new Sherman Act violations. In response to the defendant's motion to dismiss on double jeopardy grounds, the district court found that one overriding conspiracy had existed in the highway construction industry to rig bids. Because the *Beachner* defendants had previously been acquitted of this conspiracy, the court granted the motion to dismiss.

The *Broce* defendants then sought to take advantage of this ruling, and filed a motion for habeas corpus relief arguing that their convictions for two conspiracies were in violation of the double jeopardy clause, based upon the district court's ruling in *Beachner* that only one overriding conspiracy had existed. The district court denied habeas relief, but the Tenth Circuit reversed. Upon review, the Supreme Court reversed the Tenth Circuit and held that the respondents' double jeopardy challenges were foreclosed by their guilty pleas and convictions.

It is this portion of *Broce* which the Government cites to the court as support for the proposition that a guilty plea waives any subsequent double jeopardy challenge. In

citing *Broce* the Government block quotes a portion of the opinion and states the following: (appearing on page 8 of the Respondent's brief)

> In reversing the appellate court's ruling, the Supreme Court held:
>
> > A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule foreclose the collateral attack.

*See* Resp. brief at 8 quoting *Broce*, 488 U.S. at 569, 109 S.Ct. at 762. The Government's brief does not include, however, the final two sentences of this quote. In addition to that portion reprinted above, the quote should continue:

> There are exceptions [to the general rule] where on the face of the record the court had no power to enter a conviction or impose the sentence. We discuss those exceptions below and find them inapplicable.

*Broce*, 488 U.S. at 569, 109 S.Ct. at 762. The Court then went on to discuss how the *Broce* defendants differed from the defendants in *Menna*. *Id*. 488 U.S. at 574–76, 109 S.Ct. at 764–66. In so doing, the Court reiterated the basic premise that a voluntary and intelligent plea of guilty is an admission of factual guilt, as well as an admission to the substantive crime, which will normally foreclose a collateral challenge to the underlying factual allegations of the indictment. *Id*.

The Court noted that in *Menna*, however, the defendants had not sought to expand the record. *Id*. Rather, the *Menna* defendants had simply made a facial challenge to the indictment and to the power of the government to hail them into court. *Id*. In ruling, the Supreme Court made it quite clear that it was reversing the Tenth Circuit decision because the lower court had allowed the *Broce* defendants to draw upon factual evidence outside the original record in support of the double jeopardy claim. *Id*.

■ As the foregoing recitation indicates, the *Broce* decision did not rest upon a finding that a guilty plea forever precludes a subsequent double jeopardy challenge, as contended by the Government. Instead, by distinguishing and explaining *Menna*, the Court was clear in its ruling that only factual double jeopardy challenges are foreclosed by a guilty plea, whereas a facial challenge to the indictment survives the plea.

Those circuits that have considered the issue since *Broce* generally hold that a double jeopardy challenge following a counseled guilty plea may only be brought if the defendant's claim is evident from the face of the indictment and record. *See United States v. Vaughan*, 13 F.3d 1186, 1187–88 (8th Cir.) *cert. denied* —— U.S. ——, 114 S.Ct. 1858, 128 L.Ed.2d 481 (1994) (noting that a guilty plea forecloses a double jeopardy attack on a the plea unless the challenge is apparent on the face of the record); *United States v. Pollen*, 978 F.2d 78, 84 (3d Cir.1992) *cert. denied* —— U.S. ——, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993) (citing *Broce* for the principle that a defendant who pleads guilty to a criminal charge may subsequently assert a claim of multiple punishment in violation of the Double Jeopardy clause only if the violation is apparent on the face of the indictment or record); *United States v. Makres*, 937 F.2d 1282, 1285–86 (7th Cir.1991) (holding defendant's collateral double jeopardy challenge was foreclosed by *Broce* because the defendant needed an evidentiary hearing); *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir.1991) *cert. denied* —— U.S. ——, 112 S.Ct. 1678, 118 L.Ed.2d 395 (1992) (noting that a defendant in a § 2255 petition may collaterally attack a guilty plea, provided the face of the indictment or record against him establishes that his conviction violates the constitutional prohibitions against double jeopardy); *United States v. Quinones*, 906 F.2d 924 (2d Cir.1990) *cert. denied* 498 U.S. 1069, 111 S.Ct. 789, 112 L.Ed.2d 851 (1991) (recognizing, but not deciding, that the test which apparently emerges from *Broce* seems to turn on whether the claim of double jeopardy may be adjudicated on the face of the record, or requires supplemental evidence); *United States v. Kaiser*, 893 F.2d 1300, 1302–03 (11th Cir.1990) (allowing the defendants to

present a double jeopardy claim, pursuant to the Supreme Court's decision in *Broce,* because the defendant's claim did not require the court to rely on evidence outside the guilty plea record); *United States v. Montilla,* 870 F.2d 549 (9th Cir.1989) *amended* 907 F.2d 115 (9th Cir.1990) (noting that the *Menna* exception does not apply under the rationale of *Broce,* where the defendant must resort to an evidentiary hearing in order to prove her claim).

In the present case, Mr. Oakes brings his challenge based solely on the face of the indictment and record in the civil and criminal actions. He does not seek an evidentiary hearing nor is one required. The court, therefore, rejects the Government's argument that Mr. Oakes waived his double jeopardy claim when he pleaded guilty.

## B. DOUBLE JEOPARDY

■ The double jeopardy clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). The last of these protections—the one at issue here— implicates the core of the double jeopardy clause, for the prohibition against multiple punishments is a principle deeply ingrained in the Anglo–American system of jurisprudence and, in fact, traces its roots far into Greek and Roman times. *See United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1214–15 (9th Cir.1994); *see also Halper,* 490 U.S. at 440, 109 S.Ct. at 1897 citing *Ex Parte Lange,* 85 U.S. 163, 168, 18 Wall 163, 168, 21 L.Ed. 872 (1874). The prohibition against multiple punishments, however, is only triggered where the government seeks to impose the punishments in separate proceedings. *Halper,* 490 U.S. at 450, 109 S.Ct. at 1902–03. Hence, in a single proceeding, the multiple punishment issue is limited to ensuring that

the total punishment does not exceed that authorized by the legislature or the limits of the Eighth Amendment. *Id.* The law, therefore, requires this court to analyze three sub-issues in considering Mr. Oakes's double jeopardy claim. The court must consider first, whether the federal government has attempted to impose multiple punishments for the same offense; second, whether it attempted to do so in separate proceedings; and third, whether both the criminal sentence and the civil forfeiture constitute "punishment" for purposes of the double jeopardy clause.

### 1. Same Offense

■ In the context of multiple punishments, the double jeopardy bar applies if the two offenses for which the defendant is punished or tried violate the "same-elements" test. *United States v. Dixon,* —— U.S. ——, ——, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993) citing, *inter alia, Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[1] The same elements test, often referred to as the *Blockburger* test, focuses on "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment."[2] Under *Blockburger* and its progeny, if the second crime cannot be abstracted from the elements of the first, the second crime is a species of a lesser-included offense and satisfies the "same-element" test. *Dixon,* —— U.S. at ——, 113 S.Ct. at 2857 (noting that the crime of violating a condition of release cannot be abstracted from the "element" of the violated condition).

■ In the present case, Petitioner pleaded guilty to an information superseding indictment, which charged him with manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). (Ct.Rec. 20.) In the civil case, the Government sought forfeiture pursuant to 21 U.S.C. § 881(a)(7) (facilitation). (Ct.

---

1. *Dixon* overruled the Court's previous decision in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Dixon,* —— U.S. at ——, 113 S.Ct. at 2860. Thus, this court need not consider *Grady's* "same-conduct" test.

2. This test also applies to a successive prosecution challenge: however, as previously indicated, we are here only concerned with the multiple-punishment prong of the double jeopardy protection.

Rec. 1; Case No. CS–90–491–JLQ.) It is the position of the Government that section 881(a)(7) and section 841(a)(1) possess separate elements and, therefore, do not violate the *Blockburger* test.

The court finds the Government's position untenable. Section 881(a)(7) is premised upon a violation of Title 21 section 801 *et seq.* and specifically provides:

> All real property ... which is used to commit or to facilitate ... a violation of this subchapter ... [is subject to forfeiture].

Any forfeiture under section 881(a)(7), therefore, requires a preceding violation of the controlled substance statutes. Thus, the Government could not have attempted to take Mr. Oakes's home had Mr. Oakes not manufactured marijuana on the premises. To accept the Government's argument that the sections involve different elements simply because one section of the statute deals with property and the other people, would be to adopt a circular and illusory theory.

The civil forfeiture action and the Petitioner's criminal prosecution addressed the identical violation of the identical laws; the only difference between the proceedings was the remedy sought by the Government. *See United States of America v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1216 (9th Cir.1994). In fact, the Government would have had no remedy in the civil forfeiture action had it not been able to prove "a violation of this subchapter," *i.e.,* section 841(a)(1). In short, the forfeiture statute subsumes all of section 841(a)(1) and, therefore, renders the criminal conviction and the civil forfeiture the "same offense" as defined by *Blockburger.*

### 2. *Separate Proceeding* [3]

■ The Ninth Circuit recently considered the question of whether a civil forfeiture action constituted a "separate proceeding" from the underlying criminal prosecution for purposes of double jeopardy analysis, in *$405,089.23 United States Currency.*

In *$405,089.23 U.S. Currency,* the Government criminally charged the defendants with conducting a large scale methamphetamine and money-laundering operation. At approximately the same time, the Government instituted a civil forfeiture action against several hundred thousand dollars worth of the defendants' property, alleging that the pieces of property were proceeds of illegal narcotics transactions under 21 U.S.C. § 881(a)(6) and were properties involved in money-laundering under 18 U.S.C. § 981(a)(1)(A). Eight months after the defendants were convicted in the criminal action, the government filed a motion for summary judgment in the civil forfeiture action. The district court granted the government's motion for summary judgment, and the defendants appealed.

On appeal, the issue before the Ninth Circuit was whether the government violated the double jeopardy clause of the Fifth Amendment by obtaining convictions in the criminal case, and then continuing to pursue a civil forfeiture action. *Id.* at 1214. In considering the double jeopardy claim, the court had little difficulty in determining that the civil forfeiture proceeding constituted a "separate proceeding" from the criminal prosecution. *Id.* at 1216. The court noted that the overall case had involved two separate actions, one criminal and one civil, instituted at different times, before different judges, and resolved by separate judgments. The court rejected the government's argument that the two proceedings were part of a "single coordinated prosecution," finding the label to be irrelevant and of no constitutional significance. Thus, the court concluded that a civil forfeiture action that is brought and tried separately from a criminal prosecution is a "separate proceeding" for purposes of the double jeopardy clause.

In the present case, the Government filed the civil forfeiture action on November 26, 1990. On December 4, 1990, it criminally charged the Petitioner. The actions were given two separate cause numbers, CS–90–491–JLQ and CR–90–304–JLQ, and were prosecuted by two separate government attorneys, Greg Shogren and Stephanie Johnson. In addition, the civil decree of forfei-

---

**3.** The court will address this issue, although it was not contested by the Government either in its brief or at oral argument.

ture was not entered until nearly ten months after the Petitioner's criminal conviction. Moreover, it is important to note that the Government could have chosen to include the forfeiture count within the criminal indictment. It did not. Instead, the Government filed a separate civil action in advance of the criminal indictment and, by so doing, obtained the significant advantage of being able to use the criminal plea of guilty in the civil action. Having obtained that advantage, this court, like the Ninth Circuit, is unwilling to whitewash a potential double jeopardy violation by affording constitutional significance to the label of "single coordinated prosecution."

### 3. Punishment

■ The month of September 1994, saw several different cases that radically changed the state of forfeiture law and the concept of "punishment" within the Ninth Circuit. *See United States v. One 1978 Piper Cherokee Aircraft,* 37 F.3d 489 (9th Cir.1994); *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994); *Quinones–Ruiz v. United States,* 864 F.Supp. 983 (S.D.Cal.1994); *United States v. McCaslin,* 863 F.Supp. 1299 (W.D.Wash.1994). The court's recent position, however, was foreshadowed by the Supreme Court's decisions in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) and *United States v. Austin,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Because *Halper* and *Austin* are such an integral part of the Ninth Circuit's decisions, the court will briefly set them forth below in order to provide the necessary background.

In *Halper,* the manager of a medical services company was convicted of submitting 65 false claims for government reimbursement, in violation of the federal criminal false claims statute. The defendant was convicted, sentenced to prison and fined $5,000.

Following Halper's conviction, the government brought an action under the civil False Claims Act. Because Halper had been convicted of 65 separate violations, the remedial provisions of the civil Act subjected Halper to a $130,000 fine, even though the government's actual loss had only been $585 plus costs. Due to the diversity between the amount of the penalty and the actual damages incurred by the government, the district court found that the civil remedy constituted a second punishment which, if imposed, would violate double jeopardy. The court therefore limited the government's recovery to double actual damages ($1,170) plus costs.

The government filed a direct appeal to the Supreme Court. The Court noted probable jurisdiction to determine the question of whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes "punishment" for the purpose of double jeopardy analysis. *Id.* 490 U.S. at 443, 109 S.Ct. at 1899. In answering this question, the Court held that although the government was entitled to "rough remedial justice", that is, compensation according to a somewhat imprecise formula, there was a point at which rough justice became clear injustice. *Id.* at 446, 109 S.Ct. at 1900–01. This point was reached where the imprecise formula authorized a remedial sanction that did not remotely approximate the government's damages. *Id.* The Court noted that a civil remedial sanction can constitute punishment when it begins to serve the twin aims of punishment: retribution and deterrence. *Id.* at 448, 109 S.Ct. at 1901–02. The Court stated that where a civil sanction cannot fairly be said solely to serve a remedial purpose, but rather, can only be explained as also serving either retributive or deterrent purposes, it is punishment. Accordingly, the Court held that, under the double jeopardy clause, a defendant who has already been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction cannot fairly be characterized as remedial, but only as a deterrent or retribution. *Id.* at 448–49, 109 S.Ct. at 1901–02.

The Supreme Court extended the rationale of *Halper* to a civil forfeiture action brought under 21 U.S.C. § 881(a)(7) in *United States v. Austin. Austin,* —— U.S. at ——, 113 S.Ct. at 2812. In *Austin,* the Court considered the general question of whether the excessive fines clause of the Eighth Amendment applied to *in rem* civil forfeitures of property under 21 U.S.C. § 881(a)(7) and (a)(4). *Id.* —— U.S. at ——, 113 S.Ct. at

2803. As part of this question, the Court also addressed the specific sub-issue of whether civil *in rem* forfeiture actions could be considered punishment. *Id.* —— U.S. at ——, 113 S.Ct. at 2810.

The Court began by noting the historical understanding of forfeiture as a form of punishment. It also considered the legislative history of section 881 and its intended punitive nature and deterrent effect. *Id.* —— U.S. at ——, 113 S.Ct. at 2810–11. In light of the historical understanding of forfeiture as punishment, as well as the evidence that Congress intended the forfeiture provisions to deter and punish, the Court refused to conclude that section 881(a)(7) and (a)(4) forfeitures served solely remedial purposes but, rather, also had deterrent and retributive goals. In so doing, the Court rejected the government's argument that the statute should also be considered as remedial and, therefore, not punitive, citing to *Halper's* ruling that a civil sanction that cannot fairly be said to serve solely a remedial purpose is punishment. *Id.* —— U.S. at ——, 113 S.Ct. at 2812. Accordingly, pursuant to *Halper* the Court held that the forfeiture provisions constituted punishment. *Id.* —— U.S. at ——, 113 S.Ct. at 2812.

If *Halper* and *Austin* stood for the proposition that a civil *in rem* forfeiture action was punishment for purposes of the Eighth Amendment, the question then became whether it would also constitute punishment for purposes of the double jeopardy clause. The Ninth Circuit recently answered the question in the affirmative. *See $405,089.23 U.S. Currency,* 33 F.3d at 1214.

Relying upon *Austin,* the court in *$405,089.23 U.S. Currency* concluded that a civil forfeiture action constituted punishment and triggered the protection of the double jeopardy clause. The court expressly rejected the Government's argument that forfeitures pursuant to the controlled substance statutes were entirely remedial and therefore beyond the parameters of *Austin.* *Id.* at 1219–20. In rejecting the argument, the court reasoned that the government had failed to recognize the legal standard of *Austin,* which required the court to look at the entire scope of the statute rather than the characteristics

of the property the Government sought to forfeit. *Id.* In examining the statute, the court refused to conclude that it served solely a remedial purpose and, instead, found that it served at least in part the twin aims of deterrence and punishment. Because the Government attempted to exact this form of punishment in a separate proceeding from the defendants' criminal trials, the court held the action to be barred by the double jeopardy clause and reversed the order of forfeiture. On September 30, 1994, a separate panel reaffirmed this position. *See One 1978 Piper Cherokee Aircraft,* 37 F.3d at 494–95 ("There is no longer any question that the civil forfeitures under sections 881(a)(4) and (a)(7) constitute punishment for double jeopardy purposes").

In the face of *Austin, Halper* and *$405,089.23 United States Currency,* this court has no choice but to conclude that the civil forfeiture of Mr. Oakes's residence constituted punishment. Implicit in this conclusion is the finding that the civil forfeiture of Mr. Oakes's real property, in addition to his criminal prosecution, violated the Fifth Amendment's double jeopardy protection against multiple punishments.

## C. RETROACTIVITY

■ Before addressing Mr. Oakes's request for relief, however, this court must first decide whether *$405,089.23 U.S. Currency* and *One Piper Cherokee Aircraft* constitute a "new rule" for the purposes of a retroactivity analysis.

For more than a century, the government has been precluded from seeking multiple punishments in separate proceedings for the same offense. Thus, the concept of "double jeopardy" is not a new rule. Rather, the case herein involves the application of an old rule in a new factual context. *See United States v. McCaslin,* 863 F.Supp. at 1306. Although application of a prior decision to a "novel setting" may extend the precedent to create a new rule, it does not necessarily do so, provided the application does not materially alter the existing rule. *See* Liebman and Hertz, Federal Habeas Corpus Practice and Procedure, 1992 Cum.Supp. § 22A.5 (Michie

1992) citing *Stringer v. Black,* 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).

In the present case, the law of double jeopardy was not altered in any way. It was simply applied to the situation in which the government subjects a person's family home to a civil forfeiture proceeding and also criminally prosecutes based upon the same facts. The Ninth Circuit's determination that this process constitutes separate proceedings as well as punishment, resulting in a violation of the Fifth Amendment, is thus not a new rule.[4]

## D. WHICH CAME FIRST?

■ Having found a violation of the double jeopardy clause, this court must consider the issue of whether the criminal sentence or the civil forfeiture constituted the second prohibited punishment. Obviously, Petitioner contends that the criminal sanction represents the second punishment, while the Government asserts that it was the civil forfeiture.

A scrutiny of the relevant dates reveals the following. On March 6, 1991, Petitioner pleaded guilty and simultaneously forfeited his interest in his family's home, which was the subject of the civil forfeiture action, pursuant to the plea agreement. It is important to note, however, that the criminal indictment did not include a forfeiture count. In addition, neither of the criminal judgments, (Ct.Rec. 37 & 60) referred to the forfeiture.

On May 24, 1991, this court orally announced a sentence of the mandatory minimum five years, however, no judgment of sentence was entered. Thereafter, on August 28, 1991, the court reconsidered its decision and sentenced the Petitioner to 6 months alternative custody and three years probation. On August 28, 1991, the court entered its formal written sentencing judgment. On January 4, 1992, the Petitioner reported to the Geiger facility. On January 9, 1992, a decree of forfeiture was entered against the real property, following the resolution of the third party claims of Petitioner's father.

Using the above time-line, Petitioner argues that punishment attached in the criminal context when he commenced serving his sentence on January 4, 1992. Petitioner then asserts that punishment was imposed in the civil action at the time he forfeited his interest in his real property pursuant to the plea agreement on March 6, 1991. Hence, according to Petitioner's argument, the criminal sanction occurred after the civil sanction and thus constitutes the second prohibited punishment.

The Government takes a different approach. Without conceding the other issues, it is the position of the Government that the second prohibited punishment, if any, was the forfeiture of the real property as opposed to the criminal sanction. To this end, the Government argues that in the criminal context jeopardy attached when the court pronounced its sentence,[5] while in the civil context it attached when the decree of forfeiture was entered. Thus, because the decree was entered in the civil action on January 9, 1992, the Government contends it was the second prohibited punishment.

As the arguments of the parties demonstrate, the entire issue hinges upon the effect of the March 6, 1991, plea agreement. Accordingly, the court will focus its attention on that date.

The March 6, 1991, plea agreement provides in relevant part:

> The defendant, Jerald Oakes, Jr., agrees that any and all interests that he has in the property known as 43 Oakes Drive ... *shall be forfeited* to the United States pursuant to 21 U.S.C. § 881(a)(6) and (7), said property having been used to commit or to facilitate a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ...

Implicit in the language of this paragraph is the fact that Petitioner was forfeiting his

---

4. It is also important to note that *Halper* was decided in 1989, well in advance of the proceeding against Petitioner. In fact, even *Austin* was decided before the appeal of Petitioner's sentence was concluded.

5. The Government's position at oral argument, on this point, was different from the position it presented in its written brief. However, the court will accept the Government's oral statements as the position of the Respondent.

interest upon execution of the plea. This finding is supported by the language of the subsequent Decree of Forfeiture, (Ct.Rec. 37), presented by the Government in the civil action, CS–90–491–JLQ, which specifically provided "[o]n March 6, 1991, [Petitioner] agreed to forfeit his interest in the defendant property to the United States of America in a criminal plea agreement filed under CR–90–304–JLQ." This finding is also supported by the fact that following March 6, 1991, Petitioner, in effect, disappeared from the civil forfeiture action. For example, although Petitioner's attorney was served in the civil action on February 30, 1991, he did not file an answer or contest the action. In addition, the Government's trial brief in the forfeiture action (Ct.Rec. 18), stated that the only issues in need of resolution were the potential interests of Petitioner's father and Gwen York. *See* ((Ct.Rec. 18) (stating the issues of fact as whether the interest of Gerald Oakes, Petitioner's father, and Gwen York should be forfeited). Lastly, Petitioner's position is perhaps best supported by the fact that the Government never sought an order of default against Petitioner, despite the fact that he failed to file an answer.

In the face of these facts, the Government advances two arguments. First, the Government points to the language of paragraph 1(d) of the plea agreement and argues that it supports a finding that Petitioner remained in the forfeiture action following his plea. Second, the Government argues that no forfeiture could have occurred on March 6, 1991, because the Government's title was not perfected until the decree was entered on January 9, 1992.[6] In support of this second argument the Government cites *United States v. 92 Buena Vista Ave., Rumson, N.J.*, —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993).

The court finds the Government's argument, with regard to paragraph 1(d) of the plea agreement, to be without merit. Paragraph 1(d) is limited to Petitioner's agreement to cooperate in the forfeiture of his home. Because Petitioner, in the preceding paragraph of the agreement, had forfeited his personal interest in the property, the only logical purpose of paragraph 1(d) was to assure Petitioner's cooperation in the forfeiture of the interests of third parties. This finding is supported by paragraph 1(d) itself, wherein it states: "... [Petitioner's] cooperation includes ... disclosure to the government [of] whether his father, Gerald Oakes, had any knowledge of the marihuana operation, ... [and] providing the United States with any information regarding potential lienhold interests ..." Thus paragraph 1(d) did not give Petitioner a continuing interest in his home, but rather provided the Government with a cooperating witness.[7]

The Government's argument regarding title perfection is also without merit. As previously indicated, the Government cites to *92 Buena Vista* as support for its argument that its title to Petitioner's property was not perfected until the decree of forfeiture was entered. Be that as it may, that is not the question before this court. We are here concerned with the issue of when punishment was imposed, not when title was perfected. The Government's argument therefore fails, because it presupposes the conclusion that punishment was not imposed until title was perfected. Yet, clearly, Petitioner was punished when he forfeited his interest. This punishment was not abrogated by the fact that the Government had to address the interests of third parties claiming a right to the property. Interestingly, Petitioner's past interest was not among those considered valid, or needing resolution, by the Government in the civil forfeiture action decree.

Finally, it is clear from the facts surrounding the forfeiture that the Government considered Petitioner's interest forfeited at the time he pleaded guilty. However, three years later the Government is attempting to argue that Petitioner did not forfeit anything when he pleaded guilty because the plea did not perfect the Government's interest in his home. This court, however, cannot allow the Government to, in essence, change its mind three years after the civil action was closed.

---

6. This argument was heard telephonically on October 20, 1994, at the request of the court.

7. Petitioner fulfilled his obligations with regard to paragraph 1(d) when, in May of 1991, he provided the Government with a statement in which he indicated that his father was aware of the marijuana operation.

If, in 1991, the Government took the position that Petitioner forfeited his interest pursuant to his plea agreement on March 6, 1991, than it cannot now attempt to argue that nothing was lost on that date.[8]  Accordingly, the court finds that Petitioner forfeited his interest in his home on March 6, 1991.  This court *orally pronounced its sentence on May 24, 1991,* and entered a formal written judgment on August 28, 1991.  Petitioner's criminal sentence was therefore the second prohibited punishment.  It is thus the order of this court that Petitioner's sentence be **VACATED.**  Petitioner's Motion, (Ct.Rec. 82) **IS HEREBY GRANTED.**  Petitioner shall forthwith be released from the custody of the Geiger correctional facility.

**IT IS SO ORDERED.**  The Clerk is hereby directed to enter this Order and furnish copies to counsel.

---

8.  In fact, the Government could have moved to have the plea agreement withdrawn for breach had Petitioner attempted to contest the forfeiture.