**UNITED STATES of America, Plaintiff,**

v.

**Frank Javier TAMEZ, Defendant.**

**No. CR–89–156–AAM.**

United States District Court,
E.D. Washington.

March 13, 1995.

Howard N. Schwartz, Yakima, .WA, for defendant.

Pamela J. DeRusha, Asst. U.S. Atty., Spokane, WA, for plaintiff.

## ORDER DENYING § 2255 MOTION

McDONALD, District Judge.

Before the court for resolution is petitioner/defendant Tamez's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (Ct.Rec. 113). In that motion, Tamez asserts that his criminal case and the civil forfeiture actions against his property were separate proceedings constituting multiple punishments for the same offense. Tamez argues that his criminal conviction constituted a second punishment and therefore must be vacated by this court as a violation of the double jeopardy clause of the Fifth Amendment.

After conducting the initial review of Tamez's motion set forth by law, the court determined that Tamez's motion did not conclusively show that he was *not* entitled to relief. For that reason, the court ordered the government to answer the § 2255 motion. The government has properly submitted its response to the defendant's motion. For the reasons set forth below, the court is denying Tamez's motion.

BACKGROUND:

Tamez was charged in an indictment on April 19, 1989, with conspiring to deliver controlled substances and maintaining a building for narcotics trafficking, in violation of 21 U.S.C. §§ 846 and 856(a)(2), respectively. On August 21, 1989, Tamez was convicted in a jury trial of count two, maintaining a building for narcotics trafficking. The court sentenced Tamez on October 20, 1989, to a term of thirty-seven (37) months imprisonment, five (5) years of supervised release, and a fine of $50,000. Defendant's term of imprisonment commenced on October 27, 1989.

Upon appeal, the Ninth Circuit remanded Tamez's case for resentencing. On October 23, 1991, defendant was resentenced to a term of thirty (30) months imprisonment, with the other conditions remaining the same.

On November 7, 1988, the government filed a forfeiture complaint pursuant to 21 U.S.C. § 881(a)(7), requesting the seizure and forfeiture of Tamez's real property, located at 505 N. 38th Street, Yakima, Washington. On May 17, 1988, the government filed other various forfeiture complaints against items of Tamez's personal property, specifically including automobiles and cash. Tamez indicates that on or about November 9, 1988, the federal government seized his real and personal property.

All of the civil forfeiture actions filed by the government were consolidated by order

of the court on July 19, 1989, under cause number C–88–608–AAM. On October 27, 1989, the date on which his sentence was to commence, Tamez entered into a stipulation for a decree of forfeiture of certain items of seized property in exchange for the return of his real property along with some items of personal property. This stipulation was signed by the defendant prior to his surrender to the custody of the United States Marshal. The court entered a decree of forfeiture on C–88–608–AAM, on October 30, 1989.

Although defendant was released from confinement on December 8, 1991, he remains on supervised release and has yet to pay approximately 30% of his criminal fine.

## DISCUSSION:

In *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994), the Ninth Circuit determined that a civil forfeiture and criminal action pertaining to the same offense violate the Double Jeopardy Clause if: 1) the civil forfeiture action and criminal prosecution constitute separate proceedings; 2) the civil forfeiture constitutes "punishment." *Id.* at 1216. It is clear, and the government effectively concedes, that these two requirements are satisfied in this case. However, the government opposes Tamez's motion on two distinct grounds. First, the government asserts that jeopardy did not attach in the civil proceedings against his property until *after* his criminal conviction; therefore, the forfeiture was not second, or double, jeopardy. Secondly, the government makes the somewhat more complex argument that Tamez has based his motion for federal habeas relief on a "new rule" which should only be applied prospectively.

The issues raised by defendant's § 2255 motion are a product of the Ninth Circuit's decision in *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994). As this is a relatively recent decision, there is a dearth of caselaw addressing these issues. Furthermore, there appears to be discrepancies between those few applicable cases. However, it is incumbent upon this court to enter this debate in an effort to examine and resolve any perceived inconsistency.

### 1. Tamez's Criminal Conviction Did Not Constitute Second Jeopardy

■ Defendant Tamez specifically argues that the initial "punishment," or jeopardy, in this case occurred on October 27, 1989, when he signed the stipulation of forfeiture. (Ct. Rec. 114 at 7–8). He further maintains that the second "punishment" only manifested once he began *serving* his court imposed prison sentence, which commenced on October 27, 1989, *after* the signing of the forfeiture stipulation. Basing his argument on *$405,089.23*, Tamez claims that the criminal conviction must be set aside as violative of the Fifth Amendment protection against double jeopardy. However, careful examination of the caselaw reveals that Tamez's analysis of the point at which jeopardy attaches in the criminal and civil forfeiture contexts is incorrect.

#### a. Successive Prosecutions or Multiple Punishments?

■ The Double Jeopardy Clause of the Fifth Amendment protects against two distinct *types* of abuses: successive prosecutions for the same offense and multiple punishments for the same offense. *United States v. Dixon*, — U.S. —, — – —, 113 S.Ct. 2849, 2855–56, 125 L.Ed.2d 556 (1993); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *United States v. Saccoccia*, 18 F.3d 795, 798 (9th Cir.1994); *United States v. McCormick*, 992 F.2d 437, 439 (2nd Cir.1993); *see also United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989).

Whether the type of case presented by Tamez's factual situation, where a person is subject to both a civil forfeiture and criminal prosecution for the same offense, falls under the "successive prosecutions" or "multiple punishments" context, is of the utmost importance. The reason for this is that the point at which jeopardy attaches appears to differ according to the context involved.

■ For example, where a person claims to have been subjected to "successive prosecutions" for the same offense, jeopardy is

considered to attach in the initial criminal jury trial once the jury is empaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 29, 98 S.Ct. 2156, 2157, 57 L.Ed.2d 24 (1978); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977); *Mannes v. Gillespie,* 967 F.2d 1310, 1313 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 964, 122 L.Ed.2d 121 (1993); *United States v. Jarvis,* 792 F.2d 767, 769 (9th Cir.1986), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 116 (1986). If, on the other hand, the person protesting "successive prosecutions" for the same offense has pleaded guilty in the initial criminal proceeding, jeopardy is ordinarily deemed to attach upon the court's acceptance of the plea agreement. *United States v. Smith,* 912 F.2d 322, 324 (9th Cir.1990); *United States v. Vaughan,* 715 F.2d 1373, 1378 n. 2 (9th Cir. 1983); *Fransaw v. Lynaugh,* 810 F.2d 518, 523 (5th Cir.1987), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987); *United States v. Stanwood,* 872 F.Supp. 791, 797–798 (D.Or.1994).

However, the analysis apparently differs when a person claims not to have been subject to "successive prosecutions" but to "multiple punishments" for the same offense. The Ninth Circuit has articulated this distinction: "Jeopardy attaches in the double punishment context when the defendant *begins serving the sentence.*" *United States v. Von Moos,* 660 F.2d 748, 749 (9th Cir.1981) (emphasis added); *see also, United States v. Ford,* 632 F.2d 1354 (9th Cir.1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981), *overruled on other grounds,* 730 F.2d 1255, 1259 (9th Cir.1984); *Stanwood,* 872 F.Supp. at 798 n. 2.

Consequently, the critical question for this court to determine is whether the Ninth Circuit's decision in *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994), involving a criminal action and civil forfeiture for the same offense, falls within the "successive prosecutions" or "multiple punishments" rubric. Unfortunately, the cases surrounding *$405,089.23* do not answer this question unambiguously.

In *United States v. Halper,* the seminal case from which *$405,089.23* derived, the Su-

preme Court discussed the application of the Double Jeopardy Clause where a defendant had initially been convicted of criminal charges of false claims and mail fraud, and then subsequently subjected to a civil statutory penalty. *United States v. Halper,* 490 U.S. 435, 437–38, 109 S.Ct. 1892, 1895–96, 104 L.Ed.2d 487 (1989). The Court found that the prong of the Double Jeopardy Clause implicated under these facts was the protection against "multiple punishments for the same offense." *Id.* at 440, 109 S.Ct. at 1897. The Court, in this decision, provided its answer to the question as to when a civil penalty may constitute "punishment" for the purpose of the Double Jeopardy Clause. *Id.* at 446, 109 S.Ct. at 1900.

While *Halper* thus appears to define clearly the imposition of a civil forfeiture and criminal prosecution as potentially implicating the protection against "multiple punishments," the Ninth Circuit apparently arrived at the opposite conclusion in *$405,089.23:*

> The most basic element of the Double Jeopardy Clause is the protection it affords against successive prosecutions—that is, against efforts to impose punishment for the same offense in two or more separate proceedings. That protection applies with equal force whether the first prosecution results in a conviction or an acquittal.... Whatever other abuses the Clause prohibits, at its most fundamental level, it protects an accused against being forced to *defend himself against repeated attempts* to exact one or more punishments for the same offense. "The basis of the Fifth Amendment protection against double jeopardy is that a person shall not be harassed by successive trials; that an accused shall not have to marshal the resources and energies necessary for his defense more than once for the same alleged criminal acts." ... This principle is "deeply ingrained in at least the Anglo-American system of jurisprudence," ... and, in fact, traces its roots "deep into Greek and Roman times." ...
>
> There can be little doubt that this case implicates the core Double Jeopardy protection.

*$405,089.23*, 33 F.3d at 1215–1216 (emphasis added). The fact that the Ninth Circuit determined that the civil forfeiture and criminal action fell under the "successive prosecutions" rubric is further confirmed by the Ninth Circuit's requirement in *$405,089.23* that these actions constitute "separate proceedings." *Id.* at 1216. The Ninth Circuit, in contrast, noted in a footnote that if a civil forfeiture and criminal action based on the same conduct were to be brought in the "same proceeding," such an attempt "to impose *multiple punishments* ... would satisfy the Double Jeopardy Clause so long as the legislature intended to impose *both* criminal forfeiture and the more standard criminal penalties for a violation of the criminal statutes here." *Id.* at 1217. Thus, the Ninth Circuit clearly indicated that when the civil forfeiture and the criminal action occur in "separate proceedings," the "successive prosecutions" prong of the Double Jeopardy Clause is implicated.

Unsurprisingly, however, Tamez urges that this case involves not "successive prosecutions" but the infliction of "multiple punishments;" therefore, according to *United States v. Von Moos, supra,* he argues that jeopardy initially attached in his criminal case once his term of imprisonment commenced. To support this assertion, Tamez also relies upon Judge Quackenbush's recent decision in *Oakes v. United States,* 872 F.Supp. 817 (E.D.Wash.1994).

In *Oakes,* Judge Quackenbush found, in applying *$405,089.23* to a defendant's § 2255 motion, that a civil forfeiture and criminal action for the same conduct constituted double jeopardy. Faced with a situation similar to the one presented by Tamez's § 2255 motion, Judge Quackenbush was forced to determine whether the defendant's criminal sentence or the civil forfeiture constituted the prohibited second punishment. In determining when the "punishment," or jeopardy, relating to the criminal prosecution manifested, the court focused on the date that the court imposed sentence, May 24, 1991, and the date the court entered a formal written judgment, August 28, 1991. *Oakes,* 872 F.Supp. at 828–829. Judge Quackenbush found the point of the defendant's sentencing to be significant for double jeopardy pur-

poses despite the fact that the defendant had previously pleaded guilty to the criminal charge on March 6, 1991, pursuant to a written plea agreement. *Id.* at 819. Tamez, therefore, effectively argues that *Oakes* requires the court to find that jeopardy attaches in the criminal context upon the commencement of the defendant's sentence.

In *United States v. Stanwood,* 872 F.Supp. 791 (D.Or.1994), however, the district court reached a result directly contrary to *Oakes.* In that case, Judge Jones acknowledged the distinction between the "multiple punishments" and "successive prosecutions" prongs of the Double Jeopardy Clause. *Id.* at 798 n. 2. The defendant in *Stanwood* had argued, like Tamez, that his case involved "multiple punishments" for the same offense; therefore, *Von Moos* required the district court to find that jeopardy attached at the time he began serving his sentence. *Id.* While the court agreed with the holding of *Von Moos,* the court found it inapplicable since *$405,-089.23* recognized that the "pursuit of criminal and civil forfeiture penalties against the same defendant for the same conduct violates the constitutional protection against *successive prosecutions.*" *Id.* (emphasis added). Since the district court noted that the defendant's case was analogous to *$405,089.23,* it found that the defendant's sentencing was not relevant. *Id.*

That the Ninth Circuit employed the prong of the Double Jeopardy Clause involving the protection against "successive prosecutions" in *$405,089.23,* is further suggested by its recent decision in *United States v. Barton,* 46 F.3d 51 (9th Cir.1995), *amended,* 1995 U.S.App. 4593 (9th Cir. Mar. 9, 1995), upon which the government heavily relies to refute Tamez's contentions. In this case, the Ninth Circuit, citing *$405,089.23,* stated that "once *convicted* in a criminal case, a defendant cannot subsequently be punished in a civil forfeiture action based on the same violations of law." *Id.* at 52 (emphasis added). Although the Ninth Circuit did not explicitly determine the precise point at which jeopardy attached in the criminal case, this statement lends credence to the government's contention that the pertinent date is the de-

fendant's conviction rather than his sentencing.

Based on the Ninth Circuit's recent decision in *Barton*, the court's analysis of *$405,-089.23*, and Judge Jones' decision in *Stanwood*, the court finds it must employ the analysis used for determining when jeopardy attaches in the context of "successive prosecutions." Accordingly, the latest that jeopardy could have attached in Tamez's criminal proceeding was August 21, 1989.

### b. Jeopardy in the Civil Forfeiture Context

Aside from the controversy surrounding the attachment of jeopardy in Tamez's criminal action, the parties also dispute this issue as it applies to the civil forfeiture action. Tamez asserts that jeopardy attached upon the signing of the stipulation of forfeiture, whereas the government argues that jeopardy did not attach until the court entered a decree of forfeiture.

Again, to support his argument, Tamez refers to *United States v. Oakes*. *See* Defendant's Memorandum of Points and Authorities (Ct.Rec. 114) at 8. In *Oakes*, the defendant pleaded guilty in a written plea agreement to the criminal charge on March 6, 1991. Pursuant to the plea agreement, the defendant also forfeited all of his interest in the property that had been the subject of a separate civil forfeiture action. *Oakes*, 872 F.Supp. at 819. Responding to the defendant's § 2255 motion, the government asserted that no forfeiture could have occurred on March 6, 1991, because the government's title in the forfeited property was not perfected until the decree was entered on January 9, 1992. *Id.* at 828.

However, Judge Quackenbush rejected the government's argument. Instead, Judge Quackenbush drew a distinction between the imposition of "punishment" and the perfection of title. *Id.* at 828. The court concluded that the "punishment" had occurred once the defendant had forfeited his interest: on March 6, 1991, pursuant to the plea agreement. *Id.* Judge Quackenbush additionally found it significant that the facts surrounding the forfeiture indicated that the government considered the defendant's interest forfeited

at the time he entered the plea agreement. *Id.* at 828–829. The court essentially found that it would be inequitable to allow the government to "change its mind" and argue differently three years later. *Id.*

However, the district court in *United States v. Stanwood* again reached a contrary conclusion. In *Stanwood*, the district court explicitly addressed whether jeopardy attached once the defendant entered into a settlement agreement with the government regarding the civil forfeiture proceeding. *Id.* at 800. The court rejected this argument, noting that the defendant's agreement to relinquish his property rights remained subject to challenge until the time a final judgment was entered. *Id.* (*citing, United States v. 92 Buena Vista Ave., Rumson, N.J.,* — U.S. ——, ——, 113 S.Ct. 1126, 1136, 122 L.Ed.2d 469 (1993)). Thus, jeopardy attached in the context of the civil forfeiture only once the final judgments of forfeiture were entered. *Id.* at 800.

*Stanwood* is of further interest because the district court expressly distinguished *Oakes v. United States*. *Id.* at 800. The court noted that in *Oakes*, the plea agreement contained the agreement to forfeit the property, whereas, in *Stanwood*, the defendant was not required to forfeit the property as a condition of his plea. *Id.* The court in *Stanwood* further stated that the plea agreement in *Oakes* had no legal effect until it was approved, or accepted, by the court; in *Stanwood*, the settlement agreement regarding the forfeiture received no judicial sanction until the entry of the forfeiture judgments. *Id.*

The government argues that the standard applied in *Stanwood* should be applied in this case. To lend support to its argument, the government again cites *United States v. Barton*, 46 F.3d 51 (9th Cir.1995), *amended*, 1995 U.S.App. 4593 (9th Cir. Mar. 9, 1995). The government contends that the Ninth Circuit, in *Barton*, essentially held that jeopardy does not attach in civil forfeiture proceedings until the final order or judgment is entered. (Ct. Rec. 116 at 3).

In *Barton*, the defendant pleaded guilty to the criminal charge on April 6, 1992, and he

was sentenced on July 17, 1992. *Id.* at 52. On April 21, 1992, he filed a claim in answer to the government's complaint seeking forfeiture of his property, and on May 26, 1993, through a stipulation and compromise settlement, defendant agreed to forfeit the property sought by the government. *Id.* On June 10, 1993, judgment was entered on this settlement. *Id.*

In its extremely brief panel decision, the Ninth Circuit noted that all of the events in the defendant's criminal proceeding (indictment, guilty plea, and sentencing) had occurred "before the civil proceedings against the real estate and currency were *completed.*" *Id.* at 52 (emphasis added). *Id.* The government presumably characterizes this statement as the Ninth Circuit's recognition that jeopardy only attaches in the civil forfeiture context once a judgment is entered.

However, the Ninth Circuit's recent amendment of *Barton* clearly establishes that the Ninth Circuit did not rule on the issue of attachment of jeopardy in the civil forfeiture context in that case. On March 9, 1995, the Ninth Circuit modified its decision by removing the last full sentence of the paragraph at p. 875, line 5, and replacing it with the following:

> The earliest that jeopardy could have attached to the civil proceedings was on April 21, 1992 when Barton filed his answer to the forfeiture complaint. Because Barton had already pleaded guilty to the criminal charges, that criminal conviction is not now subject to a double jeopardy attack by virtue of the subsequent civil proceedings.

While this addition to the opinion further demonstrates that the focal point regarding the attachment of jeopardy in the criminal context is not the point at which the defendant commences serving his sentence, the court finds the first sentence pertaining to the civil context somewhat troubling. However, the court notes that this amendment does not state that jeopardy *does* attach at the point where a defendant files his answer to the forfeiture complaint. Rather, the court reads this sentence only as suggesting that the earliest point at which a person could plausibly argue that jeopardy had at-

tached in the civil context would be the point at which the answer is filed. Ultimately, however, the Ninth Circuit in *Barton* did not have to reach a determination of the relevant point regarding attachment of jeopardy in the civil forfeiture context because it noted that the defendant had pleaded guilty prior to all of the significant events relating to the civil forfeiture.

As a result of this amendment, it would appear that *Barton* does not provide authority for the government's position that jeopardy attaches in a civil forfeiture only upon the rendering of judgment. However, as indicated, neither does *Barton* contradict this contention. Consequently, the court is entitled to follow the reasoning of Judge Jones in *Stanwood*, in determining that the attachment of jeopardy in Tamez's civil forfeiture only occurred upon this court's entry of the decree of forfeiture on October 30, 1989. Unlike the situation presented to Judge Quackenbush in *Oakes*, the court is not faced with a plea agreement, wherein the defendant both pleaded guilty *and* forfeited his property in the same document. Rather, the stipulation of forfeiture entered into by Tamez only received judicial sanction when this court entered the decree of forfeiture. Until that judicial sanction was provided by the court, Tamez's agreement to relinquish his property remained subject to challenge.

Thus, to summarize, jeopardy attached in Tamez's criminal and civil proceedings as follows. Jeopardy had attached in his criminal prosecution by the time of his conviction on August 21, 1989. Regarding the civil forfeiture, jeopardy did not attach until the court entered the decree of forfeiture on October 30, 1989. Thus, Tamez's criminal prosecution was not barred, as there was no former jeopardy.

### 2. *United States v. $405,089.23,* Is Not a "New Rule"

Aside from its fact-specific argument that jeopardy attached in Tamez's civil forfeiture after his criminal conviction, the government additionally makes the broadly applicable argument that the Ninth Circuit's holding in *United States v. $405,089.23 U.S. Currency,* is a "new rule" which, pursuant to *Teague*

*v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), cannot be applied retroactively. The government asserts that either *$405,089.23* or its predecessor, *Austin v. United States,* — U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), announced a new rule after Tamez's conviction became final; therefore, he cannot rely upon these cases to support his § 2255 motion. (Ct.Rec. 116 at 4).

■ "Subject to two exceptions, a case decided after a petitioner's conviction and sentence became final may not be the predicate for federal habeas corpus relief unless the decision was dictated by precedent existing when the judgment in question became final." *Stringer v. Black,* 503 U.S. 222, 227, 112 S.Ct. 1130, 1135, 117 L.Ed.2d 367 (1992); *see also, Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The two exceptions to the "new rule" principle stated in *Teague* are:

> (1) that the new rule places certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe; and (2) that the new rule requires the observance of fairness safeguards that are implicit in the concept of ordered liberty.

Ira P. Robbins, *Habeas Corpus Checklists,* § 8.02 at 8–7.

■ Under *Teague,* a "new rule" is defined as follows:

> In general, ... a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final (emphasis in original; citations omitted).

*Teague,* 489 U.S. at 301, 109 S.Ct. at 1070. A corollary of this rule is that application of existing precedent in a new factual context will not constitute a "new rule." *See Butler,* 494 U.S. at 414–15, 110 S.Ct. at 1217–18. However, the Supreme Court has defined

"new rule" rather broadly, holding that if the rule articulated was "susceptible to debate among reasonable minds" rather than clearly "dictated" by existing precedent, then it will constitute a "new rule." *Id.* at 415, 110 S.Ct. at 1217.

The government argues that *$405,089.23* was the first case to hold that a civil forfeiture under 21 U.S.C. § 881 constituted punishment for purposes of the double jeopardy clause. To support its assertion, the government quotes the Ninth Circuit's observation that "[a] decade ago, the law was clear that civil forfeitures did not constitute 'punishment.'" *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1218 (9th Cir.1994). Thus, the government maintains that the Ninth Circuit itself recognizes that its holding adopted a new rule. (Ct.Rec. 116 at 6).

The government further contends that *$405,089.23* extended the holdings of the Supreme Court in both *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and *Austin v. United States,* — U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Under *Halper,* a sanction which has both a remedial and retributive or deterrent purpose must be considered "punishment." *Halper,* 490 U.S. at 441, 109 S.Ct. at 1897. The Supreme Court reaffirmed this principle in *Austin v. United States. Id.* at 1219 (a sanction which is designed even in part to deter or punish will constitute punishment regardless of whether it also has a remedial purpose).

Although the Ninth Circuit has not resolved this issue, the district court decisions addressing the issue of retroactive application of *$405,089.23* have concluded that the Ninth Circuit did *not* announce a new rule through this case. *See Oakes v. United States,* 872 F.Supp. 817, 826–827 (E.D.Wash. 1994); *United States v. McCaslin,* 863 F.Supp. 1299, 1305–06 (W.D.Wash.1994); *United States v. Stanwood,* 872 F.Supp. 791, 797–798 (D.Or.1994).

In *McCaslin,* the district court pointed out that in *Austin v. United States,* — U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court emphasized that its hold-

ing was dictated by precedent developed over many years.[1] *McCaslin*, 863 F.Supp. at 1306. The court concluded that the *Austin* and *Halper* precedents, upon which *$405,-089.23* is based, did not set forth a new rule but rather simply applied an old rule in a new factual context. *Id.* at 1306.

This court is persuaded by the reasoning of these cases regarding the issue of retroactive application and similarly finds that the Ninth Circuit did not articulate a "new rule" in *$405,089.23*. Rather, *$405,089.23* involved the application of an old rule to an evolving factual context. Such development does not proscribe retroactive application where there is no material alteration of the existing rule established in precedent. *See Oakes*, 872 F.Supp. at 826.

**CONCLUSION:**

The court finds that *$405,089.23* did not articulate a new rule; therefore, it is willing to apply the holding of that case to petitioner Tamez's factual situation. However, upon such application, the court is forced to conclude that jeopardy in Tamez's civil forfeiture proceeding did not occur until after his criminal conviction. Without former jeopardy, there cannot be double jeopardy.

Accordingly, Tamez's motion to set aside and vacate his sentence (Ct.Rec. 113) is **DENIED.**

**IT IS SO ORDERED.**

---

**1.** It is additionally significant to note that in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court stated that its decision had not been foreclosed by its prior cases. *Id.* at 441–42, 109 S.Ct. at 1897–99. Rather, the Court took pains to harmonize its ruling with its precedents.