**UNITED STATES of America, Plaintiff,**

v.

**Martin Hobart STANWOOD, Defendant.**

No. CR 91–279–JO.
Civ. No. 94–1333–JO.

United States District Court,
D. Oregon.

Dec. 16, 1994.

Kristine Olson Rogers, U.S. Atty., D.Or. and Kenneth C. Bauman, Asst. U.S. Atty., U.S. Attorney's Office, Portland, OR, for the U.S.

Martin Hobart Stanwood, defendant pro se.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

Defendant Martin Hobart Stanwood moves to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, on the grounds that his criminal conviction was barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. I have heard oral argument, reviewed

the record and considered the memoranda submitted by the parties. For the reasons stated below, I conclude that the motion must be denied.

## PRELUDE

As an integral part of the "war on drugs," civil forfeiture of property co-exists with criminal prosecutions throughout this district and virtually throughout the nation. In exercising its prosecutorial clout, the government seizes virtually every piece of personal and real property in any way tainted by illicit drug trafficking. Millions of dollars in property have been confiscated in an effort to cripple profiteers engaged in this ugly business. Often forfeiture reaches the assets of the giant drug lords so aptly described by Judge Jack Weinstein in *United States v. All Funds on Deposit*, 801 F.Supp. 984 (E.D.N.Y.1992), *aff'd. sub nom., United States v. Daccarett*, 6 F.3d 37 (2d Cir.1993), but it also touches otherwise law abiding small time entrepreneurs such as defendant first-time offender Stanwood in this case, whose two low-level marijuana grows cost him not only 78 months in federal prison without parole, but also his entire life savings invested in real and personal property.

Until very recently the government could wield its double-edge weapons of civil forfeiture and criminal prosecution with virtual impunity, when a series of appellate decisions blunted dramatically this almost routine dual assault.

These recent decisions discussed herein place before the court the challenging task of solving issues on the basis of recent interpretations of the law, as well as solving issues with no legal path to follow, but which matters of first impression potentially involve millions of dollars and the lives of dozens, if not hundreds of federal prisoners.

## FACTS

The underlying facts are not in dispute. I will summarize only the facts necessary to the determination of this motion.

### I. *The Criminal Case*

In July of 1991, Stanwood was under investigation by law enforcement officers of the Drug Enforcement Administration (DEA) and the Regional Organized Crime and Narcotics (ROCN) Task Force for suspected cultivation and sale of marijuana. Based on the information derived from this investigation, on July 18, 1991, Judge Charles Guinasso of the District Court for Multnomah County, Oregon, issued state search warrants which included warrants to search the real property located at 136 N.E. 202nd Avenue, Gresham, Multnomah County, Oregon and the real property located at 39048 and 39060 East Knieriem Road, Corbett, Multnomah County, Oregon.

On July 19, 1991, federal and state law enforcement officers executed the search warrants. Stanwood and Theresa Jolean Lugar were found within the residence located at 136 N.E. 202nd Avenue, Gresham, Multnomah County, Oregon (hereinafter referred to as the Gresham property). Inside the Gresham residence the law enforcement officers found and seized approximately one-half pound of marijuana and paraphernalia used to package and distribute marijuana. Inside one of the buildings located at 39058 and 39060 East Knieriem Road, Corbett, Multnomah County, Oregon (hereinafter referred to as the Corbett property), the law enforcement officers found and seized approximately 259 marijuana plants which were in various stages of their growth cycle. Stanwood had an ownership interest in both of these pieces of real property.

The United States decided to prosecute Stanwood, and on August 18, 1991, the grand jury returned a two count indictment in the case entitled *United States v. Martin Hobart Stanwood, et al.*, CR 91–279–JO. Both counts charged Stanwood with violations of federal drug laws. Stanwood was arrested on September 9, 1991, and released on conditions. On November 25, 1991, Stanwood entered a plea of guilty to Count One of the indictment, which charged him with the manufacture of marijuana, stating: "On or about July 19, 1991, at *Corbett*, Multnomah County, Oregon, in the District of Oregon, Martin Hobart Stanwood and Danny Claude Harris,

Jr., defendants, herein, did knowingly and intentionally manufacture marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1)." (Emphasis added.)

On March 6, 1992, Stanwood appeared before this court and was sentenced to a guideline sentence of 78 months in prison. Stanwood is currently serving this sentence, and is scheduled to be released on October 12, 1997.

## II. The Civil Forfeiture Actions

On August 20, 1991, two days after the grand jury returned the indictment in the criminal case, the United States Attorney for the District of Oregon filed a civil in rem forfeiture complaint requesting the forfeiture of the Corbett property. On the same day the United States filed a second civil forfeiture complaint seeking the forfeiture of the Gresham property. Both complaints alleged that the defendant real property was subject to forfeiture under 21 U.S.C. § 881(a)(7) and 19 U.S.C. 1610 because it "was used or intended to be used to facilitate the commission of a violation of 21 U.S.C. § 801 et seq., punishable by more than one year's imprisonment." On August 20, 1991, United States District Court Judge Robert C. Belloni issued warrants of arrest for both pieces of real property. The United States Marshal Service executed the warrants on October 8, 1991.

Stanwood filed claims in both civil forfeiture actions on October 9, 1991. In December of 1991, a tentative settlement was reached with Stanwood regarding the civil forfeiture actions. A settlement agreement for the Corbett property was signed on February 10, 1992, and a settlement agreement for the Gresham property was signed on February 20, 1992. On February 20, 1992, the United States filed motions for default and final judgment of forfeiture in the two civil forfeiture cases. Each of these motions was supported by the applicable settlement agreement, as well as a declaration by counsel for the United States, and proposed order of default and final judgment of forfeiture.

On March 17, 1992, Judge Belloni signed the order of default and the final judgment of forfeiture in United States v. 136 N.E. 202nd Avenue, Gresham, Multnomah County, Oregon, CV 91–840–BE. The United States Marshal Service sold the Gresham property on February 22, 1993, for $54,500.00. After the tax lien and expenses were paid and rents credited, the net proceeds were $46,369.50. On March 30, 1992, Judge Belloni signed the order of default and the final judgment of forfeiture in United States v. 39058 and 39060 East Knieriem Road, Corbett, Multnomah County, Oregon, CV 91–841–BE. The United States Marshal Service sold the Corbett property on January 27, 1993, for $75,000.00. After the tax lien, expenses and other claimants were paid, the net proceeds were $34,567.83.

After the entry of judgment in the civil forfeiture actions, Stanwood filed motions to reopen both actions. These motions were denied by Judge Belloni on August 5, 1993. Stanwood then filed motions to reconsider judgment in both civil forfeiture actions. Judge Belloni denied these motions on November 24, 1993. In December, 1993, Stanwood filed notices of appeal in both cases. On October 6, 1994, the Ninth Circuit affirmed Judge Belloni's denial of Stanwood's motions to reopen the civil forfeiture cases.

On October 28, 1994, Stanwood filed a motion to dismiss the final judgment of forfeiture in the Gresham civil forfeiture case. This motion asserts that the forfeiture of the Gresham property was barred by double jeopardy. On November 10, 1994, the United States filed a motion to stay any decision in the Gresham civil forfeiture case until the Ninth Circuit decides whether to grant the United States' petition for rehearing with suggestion for rehearing en banc in United States v. $405,089.23 U.S. Currency, 33 F.3d 1210 (9th Cir.1994). Both of these motions are now pending. No motions have been filed in the Corbett civil forfeiture action.

I note that Count One of the indictment, which was the basis for Stanwood's criminal conviction, specifies that the criminal acts took place at Corbett, Oregon. Stanwood was never prosecuted for criminal activity at the Gresham property. Therefore, while the civil forfeiture of the Corbett property may

have been based on the same offense as the criminal conviction, it is clear that the civil forfeiture of the Gresham property is not a possible basis for a finding of double jeopardy.

## DISCUSSION

Stanwood moves to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

Stanwood contends that his criminal conviction violated the Double Jeopardy Clause of the Fifth Amendment because it occurred after he had been punished for the same offense through civil forfeiture. The Double Jeopardy Clause states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb;...." U.S. Const., Amdt. 5.

Stanwood's motion relies on the recent Ninth Circuit decision in *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994), which held that a civil forfeiture action based on the same offense as a criminal charge could violate the Double Jeopardy Clause. The United States contests the motion on a number of grounds, contending that: 1) the decision in *$405,089.23* is flawed and should not be applied here; 2) Stanwood has waived his double jeopardy claim; 3) the decision in *$405,089.23* should not be applied retroactively; 4) even if double jeopardy analysis applies, Stanwood's criminal conviction should stand because it occurred before jeopardy attached in the civil forfeiture action; and 5) the criminal conviction and the civil forfeiture in this case were not based upon the same offense.[1] I will address these issues in the order presented.

As Judge Weinstein observed in *United States v. All Funds on Deposit*, 801 F.Supp. 984, 989 (E.D.N.Y.1992), the number of civil forfeiture cases in the United States has burgeoned as the "drug war" has escalated. Although civil forfeiture can be a powerful weapon to cripple drug-trading enterprises, it can place claimants at a terrible disadvantage. For this reason, recent appellate decisions have considered the applicability of various constitutional provisions in civil forfeiture cases. I am now asked to address issues of first impression in this district regarding the application of the double jeopardy clause to civil forfeiture proceedings.

## I. Applicability of the $405,089.23 Decision

■ The United States takes the position that the decision in *United States v. $405,089.23 U.S. Currency* was incorrectly decided. Therefore, the United States has filed a petition for rehearing with suggestion for rehearing *en banc* in that case. The United States requests that I stay my decision on the present motion until the Ninth Circuit has decided whether to grant the petition for rehearing in the *$405,089.23* case. The United States argues that "there is every reason to believe that the Ninth Circuit will grant" the petition for rehearing. Government's Answer, at p. 12. The United States also contends that on rehearing the Ninth Circuit is likely to modify the analysis and outcome of the *$405,089.23* case.

I decline to stay the proceedings in this case pending further developments, if any, in the *$405,089.23* case. The Ninth Circuit has not yet decided whether it will grant the petition for rehearing, and I cannot say that it is more likely than not that the petition will be granted, or that any change in the law would result from a rehearing. In the meantime, the panel decision in *$405,089.23* is the law of the circuit. At least one panel of the Ninth Circuit has already applied the *$405,089.23* decision as a binding precedent. *United States v. One Piper Aircraft*, 37 F.3d

---

1. The United States also contends that this court lacks jurisdiction over the present motion because Stanwood filed an earlier motion for relief under 28 U.S.C. § 2255 which is on appeal to the United States Supreme Court. The record shows that Stanwood's petition for a writ of certiorari was denied by the Supreme Court on October 17, 1994. Therefore, the United States' argument regarding jurisdiction is without merit and requires no further discussion.

489 (9th Cir.1994). Whether or not I agree with the reasoning of the *$405,089.23* decision, I am constrained to follow its holdings.

▮ Applying the *$405,089.23* decision to the undisputed facts of this case, it is clear that the criminal case against Stanwood and the civil forfeiture cases involving his property constituted separate proceedings for double jeopardy purposes. The *$405,089.23* opinion rejected the government's argument that a civil forfeiture action and criminal charges may constitute a single proceeding if they are brought as part of a "coordinated prosecution." 33 F.3d at 1218. A civil forfeiture action which is brought and tried separately from a criminal prosecution and which is based upon the same offense constitutes a separate proceeding that may violate the Double Jeopardy Clause. *Id.* A forfeiture case and a criminal prosecution would constitute the same proceeding only if they were brought in the same indictment and tried at the same time. *Id.* at 1216. I find that the civil forfeiture actions and the criminal action against Stanwood must be viewed as separate proceedings for the purposes of double jeopardy analysis.

▮ I further find that civil forfeiture pursuant to the statute applied in this case, 21 U.S.C. § 881(a)(7), constitutes punishment for the purposes of double jeopardy analysis. The *$405,089.23* decision found that a civil forfeiture based on 21 U.S.C. § 881(a)(6) constitutes punishment because such a forfeiture is not solely remedial but also serves retributive or deterrent purposes. 33 F.3d at 1221. Subsection (a)(6) of section 881 provides for the forfeiture of money or other things of value furnished or intended to be furnished in exchange for a controlled substance, or used or intended to be used to facilitate such a violation, or proceeds traceable to such an exchange. Subsection (a)(7) applies to real property which is used or intended to be used to commit or to facilitate the commission of a drug violation punishable by more than one year's imprisonment. This language is analogous to the portion of subsection (a)(6) which refers to money used to facilitate drug violations. Thus, the analysis of "punishment" used by the court in *$405,-089.23* is equally applicable to the forfeitures in this case. *Accord, United States v. McCaslin,* 863 F.Supp. 1299, 1306 (W.D.Wash.1994).

## II. *Waiver*

▮ The United States contends that Stanwood waived his right to raise double jeopardy issues at this point because he did not reserve such issues when he entered his guilty plea. I find that Stanwood did not knowingly and voluntarily waive his rights under the Double Jeopardy Clause. The subject of double jeopardy was not raised in Stanwood's plea petition, or in the plea hearing. In contrast, other specific rights, such as the right to a speedy trial and the right to assistance of counsel, were specifically enumerated and waived in the plea petition. Although failure to specifically reserve a particular pretrial issue may preclude its consideration on appeal under Fed.R.Cr.Proc. 11(a)(2), this rule does not apply in the context of a motion for relief under 28 U.S.C. § 2255.

▮ It is clear that a double jeopardy claim can be waived if a party chooses to do so. The *$405,089.23* decision states that a defendant may consent to separate trials. 33 F.3d at 1216 n. 4. A defendant may also waive a double jeopardy claim through some affirmative act which indicates waiver. *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (defendant waived double jeopardy by opposing government's motion to join two separate criminal prosecutions). However, there is no evidence of any affirmative act by Stanwood that could be construed as waiver of his double jeopardy rights.

▮ The United States argues, however, that one who enters a guilty plea without raising a double jeopardy claim is considered to have waived the claim, even if he was not aware of the double jeopardy defense at the time of the plea. This argument overstates the extent of the law. The United States relies on *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), which denied defendants an opportunity to reopen their case to assert a double jeopardy defense where an evidentiary hearing would

be required to establish facts showing double jeopardy. However, under *Menna v. New York*, 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975) (per curiam), a constitutional challenge such as a double jeopardy claim may be brought where the defendant makes a facial challenge to the indictment and to the power of the government to prosecute.

In the present case no evidentiary hearing is required. Stanwood's challenge to his conviction is based on the face of the indictment and the record in the civil forfeiture and criminal actions. Therefore, I find that Stanwood did not waive his double jeopardy claim by entering a guilty plea.

## III. *Retroactivity*

The United States contends that the *$405,089.23* decision must not be applied in this case because it announced a new constitutional rule that should affect only cases that become final after the rule is announced. The United States argues that Stanwood's criminal and civil forfeiture cases became final long before the *$405,089.23* decision was issued on September 6, 1994, and before the Supreme Court decided *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), which held that civil forfeiture constitutes a punishment.

The Supreme Court analyzed the retroactive application of new court decisions in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), stating: "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310, 109 S.Ct. at 1075. The Court defined a "new rule" as follows:

> In general, ... a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.

*Id.*

There are several exceptions to the rule stated in *Teague*. First, *Teague* applies only to new constitutional rules of criminal procedure and not to new substantive rules. *Chambers v. United States*, 22 F.3d 939, 942 (9th Cir.1994). In addition, even new rules of criminal procedure may be applied retroactively if they place certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe, or require the observance of those procedures that are implicit in the concept of ordered liberty. *McCaslin, supra*, 863 F.Supp. at 1305 (*citing* J.S. Liebman and R. Hertz, *Federal Habeas Corpus Practice and Procedure*, 1993 Cum.Supp. § 22A.1, pp. 212–13).

In order to determine whether *$405,089.23* announced a new rule of law, it is necessary to consider the development of double jeopardy law. The basic precepts of double jeopardy law, that a person cannot be prosecuted again after a conviction or an acquittal, or punished more than once for the same offense, were established many years ago. Yet, this "hoary rubric of law," which "was entrenched in English jurisprudence several hundred of years before its incorporation into the Fifth Amendment," remains vigorous in its old age. *United States v. Sanchez–Escareno*, 950 F.2d 193, 197 n. 6 (5th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992). In 1989, the Supreme Court held that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand that term." *United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989). The *Austin* decision, decided four years after *Halper*, emphasized that its holding was dictated by existing precedents developed over many years. *See* —— U.S. at —— n. 9, ——, ——, 113 S.Ct. at 2809 n. 9, 2810, 2812.

Taken together, *Austin* and *Halper* show that a civil forfeiture pursuant to 21 U.S.C. § 881(a)(7) is a punishment for double jeopardy purposes. Thus, *$405,089.23* did not establish a new rule within the meaning of *Teague*, but merely applied an old rule in a new factual context. The *$405,089.23* decision applied the existing double jeopardy

analysis to the situation in which the government pursues civil forfeiture proceedings against the property of a person who is also being criminally prosecuted.

Accordingly, I find that *$405,089.23* should be applied retroactively in this case.

### IV. *When Does Jeopardy Attach?*

■ In *$405,089.23,* the Ninth Circuit made plain its view that the second of two penalties imposed for the same offense triggers the constitutional protection against double jeopardy. However, it did not directly address the question of how to determine the date on which jeopardy attaches. In the context of a criminal proceeding where a guilty plea has been entered, the question presents little difficulty. The rule in this circuit is that jeopardy attaches at the time a guilty plea is accepted by the court. *See United States v. Smith,* 912 F.2d 322, 324 (9th Cir.1990) ("Jeopardy ordinarily attaches upon the court's acceptance of a plea agreement."); *United States v. Vaughan,* 715 F.2d 1373, 1378 n. 2 (9th Cir.1983) (jeopardy attaches upon acceptance of guilty plea by the court).[2] Other circuits are in accord. *See, e.g., Fransaw v. Lynaugh,* 810 F.2d 518, 523 (5th Cir.), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987); *United States v. Williams,* 534 F.2d 119, 120 (8th Cir.), *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976). I therefore conclude that jeopardy in the underlying criminal action attached on November 25, 1991, the date Stanwood entered a guilty plea to Count One of the indictment.

■ The more difficult question concerns the date on which jeopardy attaches in civil forfeiture proceedings. Forfeiture cases typically involve a complicated sequence of events, commencing with the government's filing of a complaint and warrant for arrest of the defendant property, and culminating with a final judgment of forfeiture. On occasion, personal property or currency is substituted as the *res* subject to forfeiture. It is not uncommon that several people claim an interest in the forfeitable property, including people not involved in any criminal case. In such cases, the proceeding cannot be terminated until the court has fully adjudicated the interests of all claimants. Clearly, at some point in this procession of events a punitive sanction is imposed in the form of a loss of property. The question is when?

Stanwood contends that jeopardy attached, at the earliest, on August 20, 1991, when his property was seized and, at the latest, on February 10 and 20, 1992, when he entered into settlement agreements with the government. The United States maintains that jeopardy did not occur until the final judgments of forfeiture were entered (i.e., on March 17, 1992, as to the Gresham property, and March 30, 1992, as to the Corbett property). Neither party has identified, nor am I aware of, any case that definitively fixes the moment of jeopardy under the particular circumstances presented in this action.[3] The issue appears to be one of first impression. For the reasons set forth below, I conclude that jeopardy in the civil forfeiture actions attached in March 1992, when the final judgments of forfeiture were entered.

The government instituted civil forfeiture proceedings against Stanwood's real property under 18 U.S.C. § 881(a)(7), which provides for forfeiture of:

> All real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of [21 U.S.C. § 801

---

2. Stanwood, relying on *United States v. Von Moos,* 660 F.2d 748, 749 (9th Cir.1981), argues that jeopardy attaches at the time a criminal defendant begins serving his or her sentence, not at the time a plea is entered. Although I agree that the *Von Moos* rule applies in cases of double punishment, this is not such a case. In *$405,-089.23,* the Ninth Circuit recognized that the pursuit of criminal and civil forfeiture penalties against the same defendant for the same conduct violates the constitutional prohibition against successive prosecutions. Because this action is analogous to *$405,089.23,* the date of Stanwood's sentencing is not relevant for present purposes.

3. The opinion of Chief Judge Quackenbush in *Oakes v. United States,* 872 F.Supp. 817 (E.D.Wash. 1994), a case relied on by Stanwood, does contain a discussion concerning the timing of jeopardy in civil forfeiture proceedings. How-

*et seq.*] punishable by more than one year's imprisonment. . . ."

In cases arising under this statute, the government has the initial burden to demonstrate probable cause to believe that the defendant property is forfeitable. *See* 19 U.S.C. § 1615; *United States v. Padilla,* 888 F.2d 642, 643 (9th Cir.1989). If probable cause is established, the government may obtain a warrant for the arrest of the defendant property. 21 U.S.C. § 881(b). In addition, a probable cause showing shifts the burden of proof to the claimant, who must produce evidence which: (1) refutes the government's showing of probable cause; or (2) provides a defense to the forfeiture. *See* 19 U.S.C. § 1615; *United States v. One 56–Foot Yacht Named Tahuna,* 702 F.2d 1276, 1281 (9th Cir.1983). In contrast to the standard for a showing of probable cause, a defense to forfeiture must be established by a preponderance of the evidence, and all the evidence relied upon must be admissible. *United States v. $5,644,540 in United States Currency,* 799 F.2d 1357, 1362 (9th Cir.1986).[4] The opportunity to recover seized property is available to any *bona fide* claimant. 19 U.S.C. § 1608.

 This brief overview of civil forfeiture procedure is sufficient to dispose of the claim that jeopardy attaches at the time a claimant's property is seized. The execution of a warrant for the arrest of real property under 21 U.S.C. § 881 marks the beginning of the civil forfeiture process, but otherwise it has limited legal significance. The act of seizure neither extinguishes the ownership rights of claimants to the property, nor does it vest title in the United States. At most, the court-sanctioned arrest of property determines only who is entitled to possession of it pending the court's final disposition of the

forfeiture complaint.[5] The respective ownership rights of the parties remain unaltered until such time as the court enters its final judgment. *See, e.g., United States v. 92 Buena Vista Ave., Rumson, N.J.,* — U.S. —, —, 113 S.Ct. 1126, 1136, 122 L.Ed.2d 469 (1993) ("Until the Government does win such a judgment, however, someone else owns the property."). Therefore, the government's seizure of property at the outset of a civil forfeiture action does not constitute punishment for double jeopardy purposes.

Stanwood maintains that the "relation back doctrine" of 18 U.S.C. § 981(f) compels a different result. If § 981(f) retroactively vests title in the government as of the date property is seized, he argues, then the date of punishment for double jeopardy purposes should relate back in the same manner. The argument is without merit. The relation back doctrine reflects the legal fiction that "a decree of forfeiture ... vest[s] title to the offending res in the Government as of the date of its offending conduct." *92 Buena Vista Ave.,* — U.S. at —, 113 S.Ct. at 1135. Fictional title, once perfected by a judgment of forfeiture, may relate back in time. Punitive sanctions, in contrast, are the stuff of non-fiction. The double jeopardy clause is not concerned with fictional punishment. Common sense compels the conclusion that punishment occurs when meted out by the court, not before.

For similar reasons, I reject Stanwood's contention that jeopardy attached at the time he entered into settlement agreements with the United States in the forfeiture cases. The agreements, while predicate to the court's issuance of its final judgment, did not signal the end of Stanwood's interest in the Gresham and Corbett properties.[6] Indeed,

---

ever, as discussed below, *Oakes* is distinguishable on its facts.

4. As Judge Weinstein noted in *United States v. All Funds on Deposit,* 801 F.Supp. 984, 989 (E.D.N.Y.1992), "[t]he substantive law, procedures, and allocation of burdens of proof in forfeiture cases ... give the United States prosecutor a substantial edge." However, in light of the recent developments in the Ninth Circuit concerning the double jeopardy issue, claimants in future forfeiture actions will play on a level field. In *$405,089.23,* the Ninth Circuit observed that forfeiture remedies must be pursued as part of the underlying prosecution.

5. It must be observed that the United States cannot retain seized property for an indefinite period of time. Due process considerations require the government to proceed in a timely manner when pursuing forfeiture. *United States v. Park,* 947 F.2d 130, 136 (5th Cir.1991).

6. The uncertainty inherent in such agreements is illustrated by the fact that Stanwood challenged the validity of the settlement agreements in post-judgment proceedings, going so far as to testify under oath that he had not agreed to a settle-

like any other executory contract, Stanwood's agreement to relinquish his property claims remained subject to challenge until the time a final judgment was entered. *92 Buena Vista Ave.,* —— U.S. at ——, 113 S.Ct. at 1136 (A claimant "may therefore invoke any defense available to the owner of the property before the forfeiture is decreed"). It is the decree of the court, not the agreement of the parties, that speaks the final word concerning the ownership of forfeitable property. *See e.g., United States v. Sanchez–Escareno,* 950 F.2d at 201 ("[A]ppellee's execution of promissory notes, in the absence of a judgment or payment by appellees, does not constitute 'punishment' under the Double Jeopardy Clause ...").

Stanwood urges the court to follow *Oakes v. United States,* 872 F.Supp. 817 (E.D.Wa. 1994), in which the court held that the defendant had forfeited his interest in seized property when he entered into a plea agreement in a related criminal prosecution. The plea agreement included, among other things, a clause requiring the defendant to forfeit his property interest to the government. In *Oakes,* the two proceedings seemingly merged, whereas in the present case Stanwood was not required to forfeit property as a condition of his plea. In addition, I decline to treat the plea agreement in *Oakes* as the equivalent of the settlement agreements signed by Stanwood. The plea agreement in *Oakes* had no legal effect until it was approved by the court, at which time the defendant's guilty plea was accepted. The court's acceptance of the plea was the critical act for purposes of jeopardy. Here, the settlement agreements between Stanwood and the government received no judicial sanction until the entry of the forfeiture judgments. For the reasons I have stated, no jeopardy attached until that time.[7] In any event, I note

that *Oakes,* an unpublished decision from another district, is not binding on this court.

Therefore, I conclude that in the present case jeopardy first attached when Stanwood entered his guilty plea on November 25, 1991. Jeopardy did not attach in the civil forfeiture cases until March, 1992, when the final judgments were entered. As a result, Stanwood's criminal conviction was the first punishment and did not violate double jeopardy. Accordingly, Stanwood's motion for relief under 28 U.S.C. § 2255 must be denied.[8]

I am quite aware of the potential impact of this decision in other cases where civil forfeiture jeopardy attached before jeopardy in criminal proceedings. However, that issue is not before me at present, and will be reserved for later decision.

## CONCLUSION

I find that *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994), is a binding precedent applicable to this case. I deny the United States' request to stay decision of this motion pending the determination of the petition for rehearing in *$405,089.23.* Under *$405,089.23,* the civil forfeiture cases and the criminal case against Stanwood constituted separate proceedings. The civil forfeiture cases constituted punishment for the purposes of double jeopardy analysis.

I find that Stanwood did not waive his double jeopardy claim by entering a guilty plea in the criminal case. I find that *$405,089.23* applies retroactively and governs this case.

I find that jeopardy attached in Stanwood's criminal case when he entered his guilty plea on November 25, 1991. Jeopardy attached in the civil forfeiture cases when final judgments were entered in March, 1992. I conclude that Stanwood's criminal conviction was

---

ment. This issue was eventually resolved only after Stanwood's appeal to the Ninth Circuit. *United States v. 39058 and 39060 E. Knieriem Road,* No. 93–36150, 1994 WL 551404 (9th Cir. Oct. 6, 1994).

7. The finding in *Oakes* that the defendant forfeited his property interest during the course of a

criminal proceeding raises the interesting question whether the *Oakes* court was presented with a true double jeopardy situation involving separate proceedings.

8. For this reason, it is not necessary to reach the issue of whether the criminal conviction and the civil forfeitures were based on the same offense.

the first punishment, and therefore does not violate the Double Jeopardy Clause. Accordingly, Stanwood's motion to vacate his conviction and sentence under 28 U.S.C. § 2255 is denied.