**Leroy RAGIN**

v.

**UNITED STATES of America.**

**No. 3:94CV379–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

June 22, 1995.

Fred Williams, Charlotte, NC, for petitioner.

Leroy Ragin, pro se.

1. The Court has also considered and reviewed the Petitioner's Amended Memorandum of Law, filed November 15, 1994.

2. Notably, the Government's estoppel argument was premised upon Mr. Ragin's plea to Count Four of the Indictment which specifically involved a money laundering payment he made for the defendant *res.* Although the civil complaint

## ORDER

ROBERT D. POTTER, Senior District Judge.

THIS MATTER is before the Court on motion of Petitioner, filed November 1, 1994, for federal habeas relief pursuant to 28 U.S.C. § 2255.[1] After careful review of all the files, records, transcripts and correspondences relating to the judgment under attack, for the reasons set forth herein, the Court finds the motion should be dismissed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 1989, the United States filed verified complaints and obtained an independent judicial finding of probable cause, and on September 1, 1989, seized extensive assets owned by Leroy Ragin.

On September 11, 1989, Ragin filed verified claims alleging ownership of the seized assets and, notably, invoking the protections of *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

On October 11, 1989 he filed an answer which denied the basic allegations of the complaint.

On August 23, 1990 Leroy Ragin withdrew his claim for defendant property and consented to entry of a Decree of Forfeiture.

On June 5, 1991 this Court entered an Order dismissing any and all claims of Leroy Ragin.

A subsequent Final Judgment was entered on July 23, 1991. The Court based its decision on Petitioner's voluntary withdrawal of his claim and consent to the forfeiture. The Court also accepted the Government's alternate argument that Petitioner, having pleaded guilty to an offense that specifically included money laundering with regard to the subject property, was estopped from denying that the property was, in fact, involved in the criminal activities which subjected it to forfeiture.[2]

was brought pursuant to 21 U.S.C. § 881, sufficient facts were shown for forfeiture under 18 U.S.C. § 981 and the Court implicitly recognized that the Government's Summary Judgment was brought under both § 981 and § 881. Title 18 U.S.C. § 981 provides for the forfeiture of any property ... involved in a transaction in violation of ... 1956.... This is in accord with the

On March 6, 1990, the Grand Jury in Charlotte returned an indictment charging Ragin with 29 felony violations of federal drug and money laundering statutes.

On June 8, 1990, Petitioner pled guilty to one count of money laundering and one count of engaging in a continuing criminal enterprise in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (2), and 21 U.S.C. § 848. At his Rule 11 hearing, the Court conducted the standard inquiry to ensure that Petitioner's plea was knowingly, voluntarily and intelligently made.

On July 31, 1990, the Court sentenced Ragin to Three Hundred Thirty Six months and five years of supervised release. The Court also notes that during the sentencing hearing, Petitioner admitted to making substantial sales of cocaine and laundering the drug money derived from those sales through the seized properties. (*See* July Sentencing Hearing Transcript, p. 18–20). Lastly, the Court notes that Petitioner signed a waiver of his right to contest the forfeitures which his counsel argued to the Court was a sign of his acceptance of responsibility. (*See* July Sentencing Hearing Transcript, p. 17–18).

On October 25, 1990, Petitioner filed his first § 2255 motion alleging ineffective assistance of counsel. Specifically, Petitioner alleged that as a result of his counsel's incomplete investigation he was forced to plead guilty. Petitioner also alleged that the CCE count was defective and therefore that the Court lacked jurisdiction to convict him, and accordingly, his attorney was ineffective for failing to challenge this defective count.

Court's expressed finding that "because such guilty plea admitted that the subject property of this civil forfeiture action was involved in unlawful money laundering as the proceeds from illegal cocaine dealing," Petitioner is estopped from pursuing his claims.

3. The Court notes that this is Petitioner's second motion for habeas relief, and thus constitutes an "abuse of the writ" absent a showing of cause for not raising this issue in his first motion or upon colorable showing of factual innocence. Petitioner has failed to make such a showing and, clearly, neither exception applies here. The abuse of the writ doctrine "in general prohibits subsequent habeas consideration of claims not raised, and thus defaulted, in the first federal

On January 22, 1991, the Government filed an answer to the Petitioner's motion. On April 22, 1991, Magistrate Judge Taylor recommended the petition be denied and dismissed. On May 6, 1991, Petitioner filed objections to the M & R. On May 21, 1991, this Court affirmed and adopted the M & R and dismissed Petitioner's motion. Petitioner appealed that ruling and the Fourth Circuit affirmed this Court's Order finding the appeal to be "without merit."

■ Petitioner has now filed another motion pursuant to § 2255 this time claiming "Petitioner did not knowingly waive double jeopardy claim and counsel was ineffective...." Specifically, Petitioner asserts that "because two separate proceeding [sic] Civil in case number C–C–89–342–P and Criminal in case No. C–CR–90–25 that Double Jeopardy Clause was violated and Petitioner's sentence and conviction must be set aside."[3]

## II. DISCUSSION OF CLAIM

Petitioner claims that "[t]he record is clear that Petitioner was subjected to the forfeiture of his property and then to criminal sanctions as punishment for the same offense." In support of his motion Petitioner essentially cites to three Supreme Court cases, *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *Austin v. U.S.*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and *Department of Revenue of Montana v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), and primarily relies upon a Ninth Circuit

habeas proceeding." *McCleskey v. Zant*, 499 U.S. 467, 490, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991).

Unless Petitioner can show a legitimate justification for allowing the generally prohibited "second bite of the apple," or "actual innocence," those issues not raised in the initial habeas proceeding, and therefore defaulted, cannot be resurrected at will and raised in second or subsequent habeas proceedings. *McCleskey*, 499 U.S. at 495, 111 S.Ct. at 1471.

Here, the record indicates that Petitioner and his counsel were well aware of both proceedings prior to the filing of his first habeas motion which directly challenged the validity of his criminal conviction.

case, *United States v. $405,089.23*, 33 F.3d 1210 (9th Cir.1994), *pet. for reh. en banc*, filed October 20, 1994. There are several reasons why Petitioner's motion should be denied and dismissed.

## I. *No Double Jeopardy*

Here, Ragin moves to vacate his conviction and sentence pursuant to § 2255 on the grounds that "[t]he record is clear that Petitioner was subjected to the forfeiture of his property and then to criminal sanctions as punishments for the same offense." Boiled to its essence, Ragin complains that his criminal conviction violated the Double Jeopardy Clause of the Fifth Amendment because it occurred after he had been punished for the same offense through civil forfeiture. As a preliminary matter, this argument fails and Ragin's criminal conviction should stand because it occurred before jeopardy attached in the civil forfeiture action.

■ As noted by the District Court of Oregon in *United States v. Stanwood*, 872 F.Supp. 791, 798 (D.Or.1994),

In [*United States v. $405,089.23* ] the Ninth Circuit made plain its view that the second of two penalties imposed for the same offense triggers the constitutional protection against double jeopardy.

As discussed more fully below, this Court does not accept the entire analysis of the Ninth Circuit in *$405,089.23*, and notes further, as did the *Stanwood* Court, that the *$405,089.23* Court did not address the issue of when jeopardy attaches. In this Circuit, jeopardy attaches at the time a guilty plea is accepted by the Court and therefore the underlying criminal action in this case attached on June 8, 1990. *See Burgess v. Griffin*, 585 F.Supp. 1564, 1571 (W.D.N.C. 1984).

■ It appears that the Fourth Circuit has not yet directly ruled upon the more difficult question concerning the date on which jeopardy attaches in a civil forfeiture proceeding. However, this Court finds that jeopardy attaches when the final judgment of forfeiture is entered, and not when the claim or answer is filed or the property is seized. *See, generally, United States v. Stanwood*,

872 F.Supp. at 798–800; *United States v. Villareal*, 875 F.Supp. 1437 (D.Or.1995); *United States v. Nakamoto*, 876 F.Supp. 235, 238 (D.Hawaii 1995); *United States v. Messino*, 876 F.Supp. 980, 983 (N.D.Ill.1995) (citing *Stanwood* with approval).

Therefore, this Court concludes that in the present case jeopardy first attached when Ragin's guilty plea was accepted by the Court on June 8, 1990. Jeopardy did not attach in the civil forfeiture proceeding until July 23, 1991, when final judgment was entered by this Court. As a result, Ragin's criminal conviction was the first punishment and did not violate double jeopardy. Accordingly, Ragin's motion to vacate his criminal conviction under § 2255 must be denied.

## II. *Alternate Grounds for Dismissal*

Ragin's petition may be dismissed on alternate grounds as well. Specifically, the petition must be dismissed because: (1) Ragin was not punished through the civil forfeiture proceedings because he withdrew his claims in that matter and consented to the forfeiture; and (2) the civil forfeiture does not, in any event, constitute "punishment" for double jeopardy purposes because the property is an instrumentality, the forfeiture was proportional to the damages caused by Ragin's conduct, and the forfeiture was essentially remedial.

1. *No punishment because of Ragin's withdrawal of his claim to property and admission that property was properly forfeitable.*

■ Ragin was not "punished" through the civil forfeiture proceedings because he withdrew his claims in that matter and consented to the forfeiture. Admittedly, Ragin originally contested the judicial forfeiture by filing a claim and answer, and later, by attempting to contest summary judgment. However, in granting summary judgment to the Government this Court found that Ragin had withdrawn all of his claims and consented to the forfeiture.

■ Indeed Ragin's claim in the forfeiture proceeding was knowingly and voluntarily withdrawn. Additionally, he never answered

any discovery regarding the property or provided any evidence regarding his standing or innocent ownership. In order for the Court to determine whether the civil proceeding constituted a punishment, it is sometimes necessary to quantify the value of the petitioner's interest in the seized property to determine the remedial character of the forfeiture. A default or a withdrawal of a claim results in petitioner losing his standing to make such a claim. Also, an admission that the money is forfeitable may be tantamount to an admission that he has no rights to the money and, thus, could not be punished for the forfeiture. *See Crowder v. United States,* 874 F.Supp. 700, 704 (M.D.N.C.1994); *United States v. Tilley,* 18 F.3d 295, 300 (5th Cir.1994).

▆ Here, Ragin withdrew his claim, consented to the forfeiture and admitted that drug proceeds were used to acquire the subject property in an attempt to launder money. Despite his unsupported last ditch attempt to revitalize his claims during the summary judgment proceedings, once withdrawn Ragin did not have a valid claim and provided no persuasive reason to believe that he had a legitimate interest in the property. Furthermore, the strength or weakness of the connection to the property cannot form the basis for the double jeopardy determination. *Ringor v. United States,* 887 F.Supp. 1371 (D.Hawaii 1995).

The Court finds that because he withdrew his claims and those claims were never considered or revitalized, he was not at risk, and jeopardy did not attach. There is no doubt this choice was made knowingly and voluntarily. The record clearly demonstrates the withdrawal was signed by Ragin and his attorney and that his consent to the forfeiture was argued at sentencing as a mitigating consideration. In short, Ragin made a voluntary choice by withdrawing his claim, thus waiving his rights to contest the sanction.

Ragin chose to forego his opportunity to contest the forfeiture and the Court held him to that withdrawal; therefore he was not a party to the forfeiture proceeding and was not permitted to claim an interest in the property. *See United States v. Amiel,* 995

F.2d 367 (2d Cir.1993) (for the proposition that where a valid judgment is entered and the appeal is now barred it would appear that the Defendant has no legitimate claim to the seized properties which would vitiate any claim of punishment based upon the civil forfeiture). Accordingly, the sanction was not directly applied against Ragin, hence no jeopardy. *See United States v. Torres,* 28 F.3d 1463, 1465–66 (7th Cir.1994) (non-party is not at risk, jeopardy does not attach, and further prosecution does not constitute double jeopardy); *see also United States v. D'Angelo,* 1995 WL 218587, (N.D.Cal.1995) (recognizing that in the absence of a claim, Defendant was not put in jeopardy and finding that an untimely claim is not a valid one).

### 2. The Civil Forfeiture was not "punishment" for double jeopardy purposes.

The Court begins with a review of the recent developments in this area of law. First, in *Halper,* the Supreme Court held that under certain circumstances a civil penalty may be a punishment for purposes of the double jeopardy clause. *United States v. Halper,* 490 U.S., at 447–448, 109 S.Ct., at 1901. The defendant in *Halper* was convicted on sixty-five counts of violating the criminal false-claims statute, specifically 18 U.S.C. § 287, by submitting fraudulent medicare claims. After Halper was sentenced to two years in prison and fined $5,000, the Government filed a separate civil action under the False Claims Act, 31 U.S.C. §§ 3729–3731, to recover a $2,000 civil penalty for each of the sixty-five violations. Notably, Halper's actions only netted him $585 in excess payments from the government and the district court estimated the government's costs at $16,000. In the subsequent civil action the government sought to impose an additional penalty of $130,000.

The gist of the *Halper* decision is that a legislature's description of a statute as civil does not foreclose the possibility that it has a punitive character. *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1945. The Supreme Court reasoned that "a government-imposed sanction ... constituted punishment if—and only if—the sanction, 'as applied in the individual

case serve[d] the goals of punishment,' that is, retribution and deterrence, instead of only the traditional remedial purpose of reimbursing the government for the costs incurred because of the defendant's wrongful conduct." *Halper* at 448, 109 S.Ct. at 1899–1902.

More pointedly, the Court stated that a civil sanction constitutes criminal punishment only in the "rare case" in which the amount of the sanction is "overwhelmingly disproportionate" to the damages caused by the wrongful conduct and thus "bears no rational relation to the goal of compensating the government for its loss, but rather appears to qualify as 'punishment' within the plain meaning of the word." *Halper* at 449, 109 S.Ct. at 1902.

In *Austin,* the Supreme Court held that the Excessive Fines Clause of the Eight Amendment applies to criminal and civil forfeiture. The Court left it to the lower courts to determine in the first instance how to determine what fine would be excessive. Notably, the *Austin* Court recognized that the Double Jeopardy Clause has been held not to apply in civil forfeiture proceedings, but only in cases where the forfeiture could properly be characterized as remedial. *See Austin* —— U.S. at ——, 113 S.Ct. at 2805, n. 4 (citations omitted).

In *Kurth Ranch* the Court revisited the *Halper* test and decided that a defendant convicted and punished for an offense may not have a non remedial civil penalty imposed against him for the same offense in a separate proceeding. In other words, if a civil penalty is remedial in character, it will not be considered punitive for double jeopardy purposes.

Therefore, in light of these decisions and assuming that a *Halper*-type analysis is required, the question becomes, what costs, losses or damages were incurred as a result of Ragin's actions in the money laundering scheme and does the sanction here bear a rational relation to compensating the government for such damages in a way which is not punitive. *See United States v. Haywood,* 864 F.Supp. 502 (W.D.N.C.1994).

However, before reaching that question, this Court must note its disagreement with the analysis applied by the Ninth Circuit Court in *$405,089.23.* Ragin relies heavily upon the holding in *$405,089.23* which essentially

> combined the two decisions [*Austin* and *Halper*] to excise Halper's inquiry into proportionality prior to lowering the double jeopardy boom.

*Ringor v. United States,* 887 F.Supp. 1371 (D.Hawaii 1995). The *Ringor* Court added that *$405,089.23* effectively erases the following language from *Halper:*

> Where a defendant previously has sustained a criminal penalty and the civil penalty sought in a subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the government may receive without crossing the line between remedy and punishment.

*Ringor v. United States,* 887 F.Supp. 1371; *citing Halper* at 449–450, 109 S.Ct. at 1902 (citations omitted).

The *Ringor* Court also noted that the *Kurth Ranch* Court left intact Halper's holding that "a civil penalty may be imposed as a remedy for actual costs to the State that are attributable to the defendant's conduct." —— U.S. at ——, 114 S.Ct. at 1948, *citing Halper,* 490 U.S. at 452, 109 S.Ct. at 1903–04. The Court in *Ringor* also noted that under the reasoning of *$405,089.23,* any forfeiture under 21 U.S.C. § 881(a)(6) constitutes punishment, no matter how small the value of the property and no matter how large the cost to the government. This Court disagrees with the *Austin/Halper* extension applied by the Ninth Circuit in *$405,089.23,* is not bound by it, and will not apply it in this case.

Rather, this Court will look to a line of Fourth Circuit decisions starting with *United*

*States v. Cullen,* 979 F.2d 992 (4th Cir.1992), and *United States v. Borromeo,* 995 F.2d 23 (4th Cir.1993), *modified,* 1 F.3d 219 (4th Cir. 1993), and more recently *United States v. Chandler,* 36 F.3d 358 (4th Cir.1994); and, *United States v. Wild* 47 F.3d 669 (4th Cir. 1995). The Court will also rely upon the Fifth Circuit's decision in *United States v. Tilley,* 18 F.3d 295 (5th Cir.1994).

First, in *Cullen,* decided after *Halper,* the Court examined a forfeiture *in rem* of a building under 21 U.S.C. § 881(a)(7) and an allegation that the building had been used to facilitate the controlled substance violations charged in the indictment. The Cullens were indicted in the criminal matter prior to the complaint for forfeiture and later pled *nolo contendere* prior to summary judgment being granted in favor of the Government on the subject property.[4] Subsequently, the Cullens claimed the forfeiture constituted double jeopardy and that the value greatly exceeded any costs incurred by the Government. In response to this argument the Fourth Circuit stated:

> Any sanction imposed by the government may have a retributive aspect. This need not mean, however, that the sanction constitutes punishment for the purposes of double jeopardy if the law also serves significant remedial aims. This Court has held ... that these forfeitures do serve broad remedial purposes. *United States v. Santoro,* 866 F.2d 1538, 1543–44 (4th Cir. 1989). Forfeiture reduces incentives to engage in the drug trade, removes instrumentalities of that trade, and helps to finance the government's law enforcement efforts. *Id.* (citations omitted).

*Cullen,* 979 F.2d at 994. The Court went on to note that "[t]he removal of an instrument of the offense is not primarily an act of punishment; rather, forfeiture protects the community from the threat of continued drug dealing." Lastly, the *Cullen* Court stated that, in contrast to *Halper,*

> the government seeks the forfeiture of the Cullens' building not to compensate itself for any costs of investigation or prosecution, but to remove what had become a

harmful instrumentality in the hands of the Cullens. The public danger the building poses in the hands of the Cullens bears little relation to its monetary value, small or large.

*Id.* The *Cullen* holding was initially extended and then revisited, in light of *Austin,* in *Borromeo.* With respect to forfeitures under §§ 881(a)(4) and 881(a)(7), the *Borromeo* Court held that

> In the wake of *Austin,* an inquiry into the proportionality between the value of the instrumentality sought to be forfeited and the amount needed to effectuate the legitimate remedial purposes of the forfeiture would seem to be in order.

*Borromeo* 1 F.3d at 221. However, with respect to proceeds of illegal activity the Court looked to Justice Scalia's concurrence in *Austin* and stated that

> a close enough connection between the property sought to be forfeited and the criminal activity might support a forfeiture regardless of proportionality. It is arguable that there is little justification for the position that one who successfully parlays his tainted dollar into a fortune should be permitted to enjoy a windfall—a result which a strict focus upon proportionality might bring about in a given case with regard to the proceeds of a crime.

*Id.*

The forfeiture proceedings at issue here were brought under §§ 881(a)(6) and 881(a)(7), as well as § 981. At first glance, the Fourth Circuit's guidance in *Cullen* and Justice Scalia's concurrence in *Austin* suggest application of an instrumentality test whereas the Supreme Court's holdings in *Austin, Halper* and *Kurth Ranch* as well as the Fourth Circuit's decision in *Borromeo* suggest application of a proportionality test. Left alone without further guidance this Court likely would have been compelled to apply both tests. *See United States v. One Single Family Residence Located at 18775 North Bay Road,* 13 F.3d 1493, 1499 (11th Cir.1994) (recognizing the two tests); *United States v. One Parcel of Real Estate Loc.*

4. This is essentially the same order as the instant case, the only difference being that the civil forfeiture complaint was filed prior to the criminal indictment.

*13143 S.W., 15th Lane,* 872 F.Supp. 968, 973–974 (S.D.Fla.1994) (same).

However, although admittedly standing alone among the circuit courts, in two recent decisions the Fourth Circuit has wisely interpreted Justice Scalia's concurrence in *Austin* as a rejection of the

> notion that proportionality is even a factor to be considered in determining whether an *in rem* forfeiture amounts to an excessive fine under the Eight Amendment and developed an "instrumentality test" for determining whether a particular *in rem* forfeiture amounts to an excessive fine. [*citing Chandler,* 36 F.3d at 356–366]. This Court held to sustain a forfeiture, a "court must be able to conclude, under the totality of the circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense, or would have been, had the offense conduct been carried out as intended." *Id.* at 365.

*Wild,* 47 F.3d at 673.[5] In reaching this decision the Fourth Circuit looked closely at the nexus between the property and the illegal drug activity. The Court noted that property is subject to forfeiture if it is given in exchange for drugs; if it is "traceable" to a drug transaction; if it is used in committing or facilitating the commission of a drug offense; or if it is intended for such use. *Chandler,* 36 F.3d at 362; 21 U.S.C. §§ 881(a)(6) & (a)(7).

The *Chandler* Court mandated that the following three factors be considered by the district court when applying the instrumentality test:

> (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder.

*Chandler,* 36 F.3d at 365–366; *Wild,* 47 F.3d at 673. The Court cautioned that no factor is dispositive and recommended that the court

should consider the following when examining the first factor:

> (1) whether the use of the property in the offense was deliberate and planned or merely incidental or fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spatial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense.

*Id.*

■ Applying the instrumentality test here, the Court finds that the relationship of the Westover property and proceeds from the Errie accounts to the offense is sufficiently close enough to render the property and proceeds themselves guilty and hence forfeitable. The instant property was involved in the violation of § 1956, as part of a money laundering scheme to conceal tainted money, specifically, money derived from the illegal sale of cocaine. In this case, the record reveals that the seized property, which includes the Westover Shopping Center and the assets of the business entity known as Errie, Inc., was the proceeds of illegal drug sales.

■ This Court finds that a forfeiture under § 881 and 981 ought not be presumed punitive where the seized property has been used substantially to accomplish illegal purposes, so that the property itself can be said to be "culpable" or an instrumentality of crime. *United States v. 38 Whalers Cove Drive,* 954 F.2d 29, 36 (2d Cir.1992). Here, the property was substantially, and perhaps exclusively, used to accomplish illegal purposes, namely launder drug proceeds. In sum, the property's role in the money laundering of drug proceeds was extensive and pivotal in allowing Ragin to conceal assets and continue to sell cocaine on a large scale. Accordingly, applying the *Chandler* factors

---

5. Although somewhat unclear, it seems that the *Austin* case involving Excessive Fines Clause and the *Halper* case involving the Double Jeopardy Clause are related in their evaluation of whether the forfeiture statutes at issue constitute punish-

ment. *See $405,089.23,* 33 F.3d at 1219 (*Austin* resolves the "punishment" issue with regard to both clauses and, somewhat redundantly, if "punishment" under the *Halper* criteria then "punishment" under both clauses).

to this case the Court concludes that the *in rem* forfeiture did not amount to punishment.

Notably, the Fourth Circuit pointed out in *Wild* that

> Of course, forfeiture of property neither constituting, nor derived from proceeds of an illegal activity must be distinguished from the forfeiture of property constituting, or derived from, proceeds of an illegal activity. The former is clearly a form of punishment; the latter is not, and thus, is not covered by the Excessive Fines Clause of the Eighth Amendment.

*Wild*, 47 F.3d at 674, n. 11. Here, the forfeiture involved property that was derived from proceeds of an illegal activity. Along these lines the Eighth Circuit Court added in *United States v. Alexander*, 32 F.3d 1231, 1236 (8th Cir.1994) that forfeiture of proceeds cannot be considered punishment, and thus, subject to excessive fines [or double jeopardy] clause, as it simply parts the owner from the fruits of the criminal activity. That is precisely the circumstance here. The forfeiture simply parts Ragin from the fruits of his drug dealing, namely the shopping center which he purchased with drug money and his business bank accounts which contained drug money.

■■■ Even though not compelled to do so, *see Chandler*, if the Court were to apply a proportionality test, the record reveals that this is not the "rare case" contemplated in *Halper* where a fixed penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. *Halper* at 448, 1902. Ragin is anything but a small-gauge offender and the forfeiture falls well short of compensating the Government and society for the damage he has perpetrated upon this community.

Accordingly, in order to complete the proportionality examination, the Court now returns to the earlier inquiry regarding the costs, losses or damages which were incurred as a result of Ragin's offenses and whether the sanction here bears a rational relation to compensating the government for such damages in a way which is not punitive.

The Court believes that the purpose of the civil sanction here is not to punish Ragin for retributive or deterrent purposes, but rather to recoup the loss from the money laundering scheme, which is a " 'legitimate nonpunitive governmental objective[ ]'." *Department of Revenue of Montana v. Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1957, *citing Halper*, 490 U.S. at 448, 109 S.Ct. at 1901, *quoting Bell v. Wolfish*, 441 U.S. 520, 539, n. 20, 99 S.Ct. 1861, 1874, n. 20, 60 L.Ed.2d 447 (1979).

As Justice Kennedy noted in *Halper*, the controlling circumstance is whether the civil penalty imposed in the second proceeding bears any relation to the damages suffered by the Government. Here it clearly does, so it cannot be considered punishment for purposes of double jeopardy. *Halper*, 490 U.S. at 453, 109 S.Ct. at 1904. Equally important, in light of the Supreme Court's proportionality concerns as expressed in *Halper*, is this Court's finding that the actual damage is far in excess of value of the property and proceeds involved.

■■■ There is little dispute that "[t]he forfeiture of proceeds of illegal drug sales serves the wholly remedial purposes of reimbursing the government for the costs of detection, investigation, and prosecution of drug traffickers and reimbursing the government for the costs of combatting the allure of illegal drugs, caring for the victims of the criminal trade when preventative efforts prove unsuccessful, lost productivity, etc." *United States v. Tilley*, 18 F.3d at 299; *see One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972); *Halper*, 490 U.S. at 444, 109 S.Ct. at 1900; *Rex Trailer Co. v. United States*, 350 U.S. 148, 153–154, 76 S.Ct. 219, 222 & n. 6, 100 L.Ed. 149 (1959).

Recently, in *Crowder* the Court examined the *Tilley* decision and noted that *Tilley* held:

> that forfeiture of proceeds from criminal activities could never be excessive so as to amount to punishment. The reason for this is that the proceeds are directly related to the criminal defendant's drug dealing and illegal gains and, therefore, the harm which he has wrought upon the communi-

ty. Therefore, the forfeiture of proceeds is always proportional to the damage caused by the criminal defendant and not a punishment for being excessive. Second, the court also reasoned that because the proceeds constitute illegal gains, the defendant was never entitled to such proceeds and, therefore, apparently lacks standing to show that he has been punished by forfeiture.

*Crowder,* 874 F.Supp. at 704; *see also S.E.C. v. Bilzerian,* 29 F.3d 689, 696 (D.C.Cir.1994) (*citing Tilley* with approval).

In *United States v. Ward,* 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980), the Supreme Court made clear that the compensation of both the government *and society* are remedial goals that a civil sanction may serve. In this case the sanction bears a substantial correlation to the damages sustained by society and the costs of enforcing the law.

The action here, of course, is the laundering of drug money in furtherance of a large-scale drug conspiracy. As this Court noted in *Haywood,* most money to be laundered in violation of 18 U.S.C. § 1956 would be forfeitable if the Government were to overcome the efforts of the money launderers, determine the true nature of the cash as *e.g.,* drug trafficking proceeds, and seize the cash. *Haywood,* 864 F.Supp. at 508.

This Court further held in *Haywood* that

the proper test to be applied in determining whether the money laundering statute is penal or remedial in this case is whether it primarily seeks to impose an arbitrary, deterring punishment upon statutory violators, or whether the purpose is to assess and designate the damages which may accrue to the government or society, as just and reasonable compensation for a possible loss having a causal connection with the statutory violation.

*Id.* In this case, the Court finds that the forfeiture here was explicitly remedial, designed to measure and define damages and provide reasonable compensation to the Government for its loss caused by Ragin's conduct and to remove the property derived from drug proceeds from the community.

The Court believes that the civil sanction in this case, which represents nothing more than drug trafficking proceeds converted into property and cash simply cannot be considered "overwhelmingly disproportionate."[6] The Supreme Court has recognized that intangible and immeasurable costs to the government are appropriate considerations in determining whether a sanction is remedial or punitive. *Rex Trailer Co. v. United States,* 350 U.S. at 154, 76 S.Ct. at 222.

In this case, the value of the property, which may be in excess of one million dollars, represents only a small portion of the total proceeds that Ragin's large scale drug organization obtained over several years through the sale of cocaine. Thus, the forfeited property is likely insufficient to totally compensate the government and society for the wrongs done. *See Tilley,* 18 F.3d at 299.

The money and property forfeited here constituted proceeds of drug trafficking. Dealing with a similar forfeiture issue, the Court in *In re Moffitt, Zwerling & Kemler, P.C.,* 846 F.Supp. 463, 476 (E.D.Va.1994) recently stated that

It is self-evident that a forfeiture of all of the funds constituting or derived from drug trafficking cannot rationally be termed excessive. Put another way, a forfeiture is in no sense excessive where, as here, it merely divests a defendant of the money and other assets derived from an illegal activity. In any event, the record here confirms that Covington's forfeitures were not excessive. He derived between $1,000,000 and $2,000,000 in profits from his drug trafficking activities, whereas the

6. Given the vast sums of money spent by State and Federal Governments on drug control activities and the size of the Ragin drug conspiracy, the fine involved here is simply not disproportionate to the damages caused by the wrongful conduct. *See Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1953 (O'Connor, J., dissenting) (providing examples of the expenses associated with drug control activity—approximately $27 billion in fiscal year 1991); *United States v. Tilley,* 18 F.3d at 299 (summarizing various sources which estimate that illegal drug sales produce approximately $80 to $100 billion per year while exacting $60 to $120 billion per year in costs to the government and society).

total amount forfeited was less than $1,000,000.

By comparison, in this case the record reveals that Ragin had been involved in drug trafficking for more than a decade and during one three year period was trafficking as much as one kilogram per week and making as much as $25,000 per kilogram. The estimated value of the cocaine moved by Ragin was in excess of four million dollars. Accordingly the forfeiture here is not disproportionate and, assuming he is the owner, it merely divests him of assets derived from his four million dollar illegal drug activity. *See also, United States v. $288,930.00 in U.S. Currency,* 838 F.Supp. 367, 370 (N.D.Ill.1993) (unlike the property seized in *Austin,* which the claimant legally possessed, the property seized in this case was illegally acquired and possessed).

### III. *Conclusion*

In sum, the Court concludes: (1) jeopardy did not attach in the civil forfeiture proceeding until final judgment, therefore Ragin's criminal conviction constitutes a first punishment and is not subject to a double jeopardy claim; alternatively, (2) the forfeiture in Case No. C–C–89–342 was not punishment with respect to Ragin as he withdrew any and all claims to the property and consented to the forfeiture; (3) the civil forfeiture here was not "punishment" which implicates the Double Jeopardy Clause because the property was clearly derived from the proceeds of an illegal drug operation and money laundering scheme; (4) an application of the *Chandler* test leads this Court to conclude under the totality of the circumstances that the property was a substantial and meaningful instrumentality in the commission of the offense; and lastly, (5) the Court finds that the forfeiture is more remedial than punitive and is therefore, not barred under the double jeopardy principles delineated in *Halper.*

Having found sufficient grounds upon which to dismiss the § 2255 motion, this Court will not address the *Blockburger* "same offense" test to determine whether the subsequent prosecution violated the Double Jeopardy clause nor will it address the argument that these proceedings constituted a single coordinated proceeding.

**NOW, THEREFORE, IT IS ORDERED** that Petitioner's motion to vacate, set aside or correct sentence be, and hereby is, **DISMISSED.**

The Clerk is directed to certify copies of this Order to Petitioner and the United States Attorney.